494 A.2d 420

**COMMONWEALTH of Pennsylvania**

v.

**Everett E. SHIREY, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 18, 1982.

Filed May 31, 1985.

Dante G. Bertani, Public Defender, Greensburg, for appellant.

Perry S. Patterson, Deputy Attorney General, Coudersport, for Commonwealth, appellee.

Before MONTEMURO, JOHNSON and MONTGOMERY, JJ.

MONTEMURO, Judge:

This case is before us for the second time. In *Commonwealth v. Shirey*, 333 Pa.Super. 85, 481 A.2d 1314 (1984), we remanded this case [1] and directed the lower court to transcribe the notes of testimony of May 15 and 16, 1980, in order to address appellant's contention that the double jeopardy clause of the Fifth Amendment barred this prosecution.

1. Appellant's initial appeal involved three consolidated appeals. In the instant case, we address only the appeal from the judgments of sentence entered at Potter County Docket Nos. 29 and 31 of 1980. We had retained jurisdiction as to these two appeals.

Appellant's double jeopardy argument is that the prosecution of appellant on other charges docketed at Nos. 28 and 30 of 1980 in Potter County should have been consolidated with the prosecution of the charges in the instant appeal, i.e., Nos. 29 and 31 of 1980, because all the charges arose from the same criminal episode. Over appellant's objections, the charges at Nos. 28 and 30 were consolidated for trial, and those at Nos. 29 and 31 were consolidated for a separate trial. The trial of Nos. 28 and 30 commenced on May 15, 1980 and ended on May 16, 1980 when the trial court declared a mistrial due to the inability of the jury to reach a verdict. The trial of Nos. 29 and 31 involved in the instant appeal commenced on July 10, 1980, and concluded with the jury returning a verdict of not guilty of indecent assault [2] and guilty of corruption of a minor [3] at No. 29, and not guilty of indecent assault and guilty of corruption of a minor at No. 31.

In the earlier appeal, we concluded that the crimes involved at Nos. 28 and 30 did indeed arise out of the same criminal episode as those charged at Nos. 29 and 31. *Commonwealth v. Shirey, supra,* 333 Pa.Superior Ct. at 131–33, 481 A.2d at 1341. Despite this fact, the Commonwealth decided to consolidate the charges as set forth above, and thereby "threatened a violation of appellant's constitutional right not to be placed in jeopardy twice for conduct arising from a single criminal episode." *Id.* However, the only prior prosecution which existed at the time of the No. 29 and No. 31 prosecution was the *mistrial* of May 16, 1980. After reviewing the applicable law, we determined there would be no violation of the double jeopardy clause if the first trial concluded without a verdict for reasons of manifest necessity. *See Commonwealth v. Shirey, supra,* 333 Pa.Superior Ct. at 131–33, 481 A.2d at 1341–43 and cases cited therein.

■ We have examined the notes of testimony from the May 15 and 16, 1980 trial and find a mistrial was properly

2. 18 Pa.C.S. § 3126.

3. *Id.* § 3125, repealed and reenacted as § 6301.

declared by the trial court. In that proceeding, the jury began its deliberations at 4:33 p.m. on May 16, 1980. At 8:03 p.m., the jury expressed its difficulty in interpreting the law, was instructed by the trial judge for a second time, and resumed its deliberations. At 10:09 p.m., the jury returned again, this time to inform the court that it was unable to render a verdict. The foreman stated that there was a "six/six split" on the panel; the trial court polled the jury and every juror indicated his or her belief that there was a hopeless deadlock and no amount of time or further instruction would result in a verdict. We find the mistrial in these circumstances to have been manifestly necessary due to the lack of any reasonable probability that the jury would agree upon a verdict and, as such, conclude there was no violation of the double jeopardy clause when appellant was later prosecuted for the charges at Nos. 29 and 31. *Commonwealth v. Murry*, 498 Pa. 504, 447 A.2d 612 (1982).

Appellant's next contention to which we address ourselves is that the evidence was insufficient to support the verdict.

 Preliminarily, we state our standard of review. In evaluating a claim of insufficient evidence, we must view the evidence in the light most favorable to the Commonwealth as the verdict winner and, drawing all reasonable inferences therefrom, we must determine if the Commonwealth has presented sufficient evidence to find every element of the crime beyond a reasonable doubt. The Commonwealth may sustain its burden based on wholly circumstantial evidence. The trier of fact in passing upon the credibility of all witnesses and determining the weight afforded the evidence, is free to believe all, part or none of the evidence. *Commonwealth v. Harper*, 485 Pa. 572, 403 A.2d 536 (1979).[4]

4. Viewed in such a light, the facts pertinent to this appeal have been outlined in *Commonwealth v. Shirey*, 333 Pa.Super. 85, 131–33, 481 A.2d 1314, 1340–41 (1984).

At No. 29, appellant was charged with indecent assault and corruption of a minor,[5] the charges pertaining to alleged conduct toward Bobbi Jo Marshall (11 years of age); at No. 31, appellant was charged with the same crimes, the alleged victim there being Julie Lynn Marshall (aged 13). As to both victims, appellant was found not guilty of the indecent assault charges.

Regarding both corruption convictions, the informations specifically charged corruption of a minor by certain acts, *viz:*

1. committing the act of indecent contact;

2. showing the victim "obscene magazines and literature"; and,

3. on several occasions having conversations with the child "relating to having sexual relations with him, watching while he had sex with another girl, and how he had sex with a horse."

This court has stated that "[b]y specifically charging the manner by which appellant was alleged to have corrupted the morals of these minors, the Commonwealth was required to prove that appellant did [the underlying act]." *Commonwealth v. Lambert,* 226 Pa.Super. 41, 44, 313 A.2d 300, 301 (1973). In *Lambert,* the defendant was charged with corrupting the morals of certain minors by furnishing dangerous drugs to the minors. At trial, while there was testimony that the defendant had supplied the minors with six pills identified as "red devils", the Commonwealth did not prove the drugs were "dangerous" as defined by the then operative Drug, Device, and Cosmetic Act.[6] "Having failed to do so, the Commonwealth did not prove the offense

5. 18 Pa.C.S. 6301(a), which defines the offense of corruption of minors, provides:

 Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, is guilty of a misdemeanor of the first degree.

6. Act of September 26, 1961, P.L. 1664, 35 P.S. § 780–2(h).

as charged in the indictment, and appellant's motion in arrest of judgment should have been granted." *Id.* The *Lambert* court, therefore, reversed the lower court's conclusion that the broad scope of 18 Pa.C.S. § 6301 prohibiting corruption of minors allowed the conviction. *See also Commonwealth v. Davison,* 243 Pa.Super. 12, 364 A.2d 425 (1976) (when charging a defendant with corruption of minors based on alleged statutory rape, the Commonwealth must prove statutory rape or the corruption conviction cannot stand).

In *Commonwealth v. Wolff,* 273 Pa.Super. 27, 416 A.2d 1072 (1979), appellant was charged, *inter alia,* with indecent assault and the corruption of a minor relating to two different victims, all of which occurred during the same criminal episode. As to one victim, the lower court at trial dismissed the indecent assault charge; the jury subsequently found the defendant guilty of corrupting a minor. However, because the information specifically alleged corruption by an act of indecent assault, this court held that the same result as occurred in *Lambert* should have resulted there. The *Wolff* court reversed the corruption conviction, finding the evidence insufficient to sustain the corruption conviction.

█ Given the decisions of this court in *Lambert, Davison,* and *Wolff,* we are constrained to find that the corruption conviction cannot be supported by the alleged acts of indecent assault, for as the jury clearly decided, the Commonwealth failed to prove those acts. Indeed, unlike *Lambert* where the court granted a demurrer on the underlying drug charge and *Wolff* where the court dismissed the underlying indecent assault charge, here the jury considered all the evidence as to the underlying indecent assault and found the Commonwealth had failed to meet its burden of proof. The jury's finding of not guilty in both instances of indecent assault is conclusive and prohibits us from sustaining the corruption convictions based upon these acts. We must, therefore, determine if the conviction can

be sustained by the evidence of the other acts specifically set forth in the informations.

The second type of conduct, as set forth in the information, by which appellant corrupted the minors was "showing ... obscene magazines and literature." At trial, the two girls testified that they were shown "dirty books" containing pictures of "naked women and naked men" (N.T. July 10 and 11, 1980 at 28–29, 62). Although neither girl was certain, one of the books may have had "Playboy" on the cover (*Id.* at 79–80) and the "top of it said something about sex." (*Id.* at 79). The books, magazines or pictures were never produced at trial. On appeal, appellant argues the Commonwealth failed to offer any evidence that the "so called 'dirty books' ... [were] obscene or even what they contained." Appellant Brief at 21.[7]

In determining the sufficiency of this evidence, we find this court's decision in *Commonwealth v. Chapman*, 186 Pa.Super. 632, 142 A.2d 469 (1958) to be instructive. In *Chapman*, the defendant was convicted of furnishing alcoholic beverages to a minor and corrupting the morals of a minor. The minor testified that the defendant showed him pictures, taken from a drawer in the defendant's bedroom, which showed " 'a lady in the nude and a man and there were others just like it.' " *Id.*, 186 Pa.Super. at 634, 142 A.2d at 471. Based on this information, police officers seized from the desk in defendant's bedroom 40 pictures showing naked men and women in pornographic positions; these pictures were admitted into evidence at trial.

The *Chapman* court quoted approvingly from the lower court charge, which stated in part:

Because while the boy said he saw pictures of nude men and women it does not follow that the pictures of nude

---

**7.** Appellant has preserved this issue by virtue of his demurrer at trial and his post-verdict motions. We also note that appellant's argument here is different from the one made in the appeal from Nos. 28 and 30 where appellant argued the Commonwealth failed to prove obscenity of certain films, as that argument was based *solely* on *Commonwealth v. LaLonde*, 447 Pa. 364, 288 A.2d 782 (1972). *See Commonwealth v. Shirey*, supra, 333 Pa.Super. at 127, 481 A.2d 1338–39.

men and women alone would be lewd or lascivious or obscene, because there are pictures of nude men and women that are pictures of art, true art, that would not be obscene or lewd or lascivious. You would have to find from the evidence that the defendant showed this boy these pictures or some of the self same pictures that were exhibited to you. And if you find that you may find the defendant guilty as charged.

*Id.*, 186 Pa.Superior Ct. at 635, 142 A.2d at 471.

This court found the evidence of exhibiting obscene materials sufficient to support the corruption charge because the pictures introduced were clearly obscene and because of the minor's and officers' testimony which linked those pictures with the ones shown the minor.

We do not believe the evidence in the instant case sufficiently established the obscenity of the materials shown [8] to the Marshall girls. The girls were uncertain of the name of the materials shown to them. More importantly, the only evidence produced by the Commonwealth tending to show what was contained in the materials was that the pictures were "dirty" because they showed naked men and women. Significantly, the jury did not have the benefit of viewing the allegedly obscene photographs themselves. We do not believe it is reasonable for the fact finder to draw the inference that a picture is obscene based solely on the fact it showed naked men and women and that one of the covers mentioned the word sex, especially when the materials themselves have not been viewed. As the lower court in *Chapman* explained, the description by the minors alone was hardly conclusive in proving that they were lewd, lascivious or obscene. While our supreme court has stated, in a different context, that a jury needs no assistance in determining whether that which is before it is obscene, *Commonwealth v. Rodgers*, 459 Pa. 129, 327 A.2d 118 (1974) (whether certain books in evidence were obscene), the

8. We also note that Julie Lynn testified another girl, Joy Paucke, and not appellant was the one who retrieved the materials from behind the seat in appellant's truck, although there also was testimony that appellant encouraged the girls to look at the pictures.

testimony here presents too insufficient a basis upon which to base an opinion.

Thus, standing alone, we would not find evidence sufficient to sustain the conviction. However, contrary to appellant's contention, the evidence relating to the obscene magazines and literature does not stand alone.

According to appellant, there was no testimony adduced at trial concerning the conversations alleged in the information.[9] This is simply not the case. Bobbi Jo Marshall testified that appellant said to the girls "if you want rubbed come over and sit by me." (N.T. July 10 and 11, 1980 at 30). She also testified that appellant asked her if she did what another girl had done, which Bobbi Jo understood to mean allowing appellant to place his hand between her legs and touch her breasts.[10] (*Id.* at 36). In addition, Julie Lynn Marshall corroborated her sister's testimony, stating that appellant "asked us if we wanted him to feel us and we told him no." (*Id.* at 65). We find this evidence, and the reasonable inferences drawn from it, sufficient to sustain the jury's verdict on the corruption charge.

Appellant would also have us find error when the lower court refused appellant's motion for mistrial after the Commonwealth elicited the testimony from Bobbi Jo Marshall regarding criminal activity engaged in by appellant

**9.** Appellant argues that the lower court acknowledged, and indeed instructed the jury that no testimony was offered relating to the conversations alleged in the information. It is true that the lower court instructed the jury there was no "testimony concerning the [appellant] having conversations with the child relating to having sexual intercourse with him" or having the child watch while he had sex with another girl or appellant's having sex with a horse. (N.T. July 10 and 11, 1980 at 171–72). However, the information charged appellant with corruption by, *inter alia,* having conversations with the girls "relating to having sexual *relations* with him." Evidence of these conversations clearly was adduced at trial. See discussion of Bobbi Jo's and Julie Lynn's testimony, *infra.*

**10.** We consider this evidence in reviewing appellant's sufficiency claim since we have found it was properly admitted by the trial court. See our discussion *infra.*

with Pam McMillan.[11] Specifically, appellant contends it was highly prejudicial error to admit the following testimony:

[Assistant District Attorney]: What was said at that conversation?

[Bobbi Jo Marshall]: He [appellant] said do you do what Pam does.

Q. And what did you say?

A. I go, what? And he goes, never mind. Well, I knew what Pam does because Joy and Michelle told me.

Q. What does Pam do?

[Defense objection; overruled]

\* \* \* \* \* \*

Q. What did you think Mr. Shirey was talking about when he said do you do what Pam does?

A. She does bad stuff.

Q. Such as?

[Defense counsel]: Your Honor, I would object unless this witness knows and at that time knew what supposedly Pam did.

[The Court]: Counsel, your objection is overruled.

A. She lets him but [sic] his hand between her legs and lets him suck on her breasts and stuff like that.

(*Id.* at 35–36).

As we stated at length in appellant's previous appeal, while, as a general rule, evidence of criminal activity other than that with which a defendant is charged is inadmissible at trial, exceptions do exist. *See Commonwealth v. Shirey, supra*, 333 Pa.Super. at 122–23, 481 A.2d at 1334–46 and the authority cited therein. One such exception, frequently called the *"res gestae"* exception, has been set forth by our supreme court as allowing the admission of evidence of another criminal act "where 'such prior ... criminal act

11. Appellant raises, on appeal, other instances where the Commonwealth improperly elicited testimony of other criminal activity committed by appellant. However, we agree with the lower court that appellant failed to specify these instances in his post-verdict motions and, therefore, he cannot raise them on appeal.

formed a part of a chain, or was one of a sequence of acts, or became part of the history of the event on trial, or was part of the natural development of the facts.'" *Commonwealth v. Brown*, 462 Pa. 578, 591, 342 A.2d 84, 90 (1975), *quoting, Commonwealth v. Williams*, 307 Pa. 134, 148, 160 A. 602, 607 (1932). In the instant case, we find the testimony regarding Bobbi Jo's understanding of what appellant had asked her to be an integral part of the alleged conversation by which appellant corrupted her. It was, therefore, admissible under the *"res gestae"* exception. We do not believe the Commonwealth elicited this testimony in an attempt to show appellant's predisposition to commit the crime charged, or to impugn his character; rather, the other criminal act was necessarily brought out to prove the nature of the deed with which he was charged. J. WIGMORE, EVIDENCE § 218 (Tillers rev. ed. 1983).

Appellant argues, furthermore, that the testimony was so highly prejudicial as to conclusively weigh against admitting it. We are satisfied that whatever prejudice may have resulted was sufficiently cured by the trial court's cautionary instruction which was given immediately after appellant's objection, *viz.:*

Members of the Jury, you have heard this witness testify as to possible other activity of the defendant [appellant]. You should not consider the truth or falsity of what he allegedly did. He is not being charged with anything else. The only relevancy of that would be the witness's understanding of what Mr. Shirey said. The fact that he may or may not have done it or the truth or falsity of the reference is not relevant. You are so charged. Counsel may cross examine.

(N.T. July 10 and 11, 1980 at 37).

Finding no abuse of discretion, we conclude the lower court did not err in refusing appellant's motion for mistrial. *Commonwealth v. Shirey, supra.*

■ Finally, appellant contends the lower court erred when it refused to give a requested "missing witness" charge regarding certain witnesses who were listed on the

bills of information, but who were never called by the Commonwealth to testify at trial. Because appellant never asked to call these witnesses and does not contend he would have called them if they were available, we reject this assignment of error. *Commonwealth v. Gilman,* 485 Pa. 145, 401 A.2d 335 (1979); *Commonwealth v. Shirey, supra.*

Finding no reversible error, we affirm the judgment of sentence.