505 A.2d 321

**COMMONWEALTH of Pennsylvania**

v.

**Lee GREEN, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 17, 1985.

Filed Feb. 25, 1986.

---

172

Spero T. Lappas, Harrisburg, for appellant.

Katherene E. Holtzinger-Conner, Deputy District Attorney, Harrisburg, for Com., appellee.

Before WICKERSHAM, CIRILLO and JOHNSON, JJ.

WICKERSHAM, Judge:

Lee Green files this direct appeal from the judgment of sentence imposed upon him by the Court of Common Pleas of Dauphin County following his murder conviction.

On the evening of October 10, 1983, Michael Bollinger was shot to death at the corner of Susquehanna and Clinton Streets in the City of Harrisburg. He had left his place of employment earlier in the evening, stopped to visit his girlfriend for a short while, and was walking to his residence a few blocks away. An autopsy performed two days later revealed that he died as a result of a single gunshot wound to the head. There were apparently no eyewitnesses to the murder.

Ten days after the shooting, the police arrested William Pew, who implicated himself and a Marcel Everson in Bollinger's murder. Subsequently, William Pew changed his story and stated that the other person involved was appellant, Lee Green, and not Mr. Everson. Appellant's involvement in the murder being corroborated by two other sources, he was arrested on October 26, 1983 and taken in for questioning. After being advised of his rights, and of the fact that Pew was in custody, he made a statement admitting his participation in the robbery which led to the shooting death of the victim. The gist of the statement was that on the night of the murder, he had met Pew on Market Street, where they discussed robbing someone. Appellant borrowed a gun, and gave it to Pew. They went "uptown," saw the victim walking down an alley and began chasing him. Pew caught up with him first and when appellant arrived, Pew had the victim standing against the wall on Clinton Street. Appellant bent over to pick up a dollar bill which was laying on the ground. When Pew asked the victim if he had any more money, he said no, whereupon Pew shot him in the head. Appellant and Pew fled from the scene.

On October 27, 1983, the police recovered the gun that had been loaned to appellant on the date of the murder. Subsequent testing proved it to be the gun from which the fatal shot was fired.

Appellant was charged with murder, robbery, criminal conspiracy, and unlawful carrying of firearms, and was ordered to stand trial with William Pew, who was similarly charged. Appellant's motion to suppress his inculpatory statement was denied, following a hearing on January 13, 1984; however, a motion to sever his trial from Pew's was granted. After a jury trial on March 12–14 of 1984, appellant was convicted of murder in the second degree, robbery, criminal conspiracy, and unlawful carrying of firearms.[1] Post-trial motions were filed and denied and on July 10, 1984, appellant was sentenced to life imprisonment on the murder conviction, a concurrent term of ten (10) to twenty (20) years on the robbery conviction, a consecutive term of two and one-half (2½) to five (5) years on the firearms conviction, and a term of five (5) to ten (10) years on the conspiracy conviction, the last sentence being consecutive to the first three. Appellant's motion to modify sentence was denied on July 30, 1984, and his timely appeal followed.

Appellant raises five issues on appeal:[2]

1. Did the lower court err in denying [appellant's] motion to suppress statements?

2. Did the lower court err in allowing, at [appellant's] trial for murder, testimony that [appellant] was involved in an unrelated conspiracy to commit robbery?

---

1. Subsequent to appellant's trial, his co-defendant, William Pew, pled guilty to first degree murder on April 2, 1984. He was subsequently sentenced, under Dauphin County 2271, 2271(a), 2322 C.D. 1983, to life imprisonment, plus a total of 22–45 years on the remaining convictions. An appeal from a denial of his P.C.H.A. petition is currently pending before a different panel of our court at 297 Harrisburg 1985.

2. Issues 1, 2, 3, and 5 were properly preserved by their inclusion in appellant's post-trial motions. Issue 4 was properly preserved in appellant's motion to modify sentence.

3. Did the lower court err in allowing [appellant] to be impeached at trial by his suppression hearing testimony?

4. Was [appellant's] right to be free from double jeopardy violated when, after being sentenced and taken from the courtroom, he was returned to the courtroom to be given a more severe sentence?

5. Are the convictions against the evidence, or against the weight of the evidence?

Brief for Appellant at 2.

After careful consideration of the record, the briefs of the parties, and the relevant caselaw, we have concluded that issues 1, 3, and 5 were correctly and adequately addressed by the September 24, 1984 opinion of the Honorable Warren G. Morgan. We see no need to discuss them further.

Appellant argues that the trial court erred in admitting testimony during the trial that appellant was involved in a later conspiracy to rob a convenience store. Specifically, part of appellant's written statement to the police contained the following exchange, which was admitted into evidence at trial:

Q. Did you ask Pew why he shot the man?

A. Yeah. He said so the dude couldn't identify him.

Q. Did you after that go to the AM–PM Mini Mart at 17th and Derry?

A. We walked to the crossroads, me, him, and about two more people. There was a whole lot of peoples with us.

Q. How many shots did Pew fire that night?

A. One. That's all I know of. We was down at the AM–PM and I couldn't find him. And then I went back to 14th and Regina and we couldn't find him. And we went back to the AM–PM again, when I seen Pew again.

Q. I thought you still had the gun. Explain that statement.

\*    \*    \*    \*    \*    \*

A. Pew gave me the gun back. Then he wanted to rob the AM–PM and I gave the gun back to him. Then later on at the AM–PM, I got it back from him.

Q. Did Pew rob the AM–PM store?

A. No. He said there was too many people there.

N.T., Trial, at 104–05.

Appellant objected to this testimony on the ground that the statement involved evidence of an unrelated robbery.

■ Where the trial court has admitted evidence of other crimes committed by a defendant and his cofelon(s), our scope of review is whether the trial court abused its discretion in allowing the admission of such evidence. *Commonwealth v. Ulatoski*, 472 Pa. 53, 371 A.2d 186 (1977); *Commonwealth v. Middleton*, 320 Pa.Super. 533, 467 A.2d 841 (1983).

■ The general rule, of course, prohibits testimony regarding unrelated criminal acts of the accused. *Commonwealth v. Beasley*, 505 Pa. 279, 479 A.2d 460 (1984); *Commonwealth v. Reiss*, 503 Pa. 45, 468 A.2d 451 (1983); *Commonwealth v. Davis*, 331 Pa.Super. 285, 480 A.2d 1035 (1984); *Commonwealth v. Shealey*, 324 Pa.Super. 56, 471 A.2d 459 (1984). There are, however, special circumstances justifying exceptions to the general rule: for example, when the evidence of other criminal acts tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan, or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; (5) the identity of the person charged with the commission of the crime on trial; or (6) that the evidence is part of the same transaction as the case on trial. *Commonwealth v. Murphy*, 346 Pa.Super. 438, 499 A.2d 1080 (1985); *Commonwealth v. Shirey*, 333 Pa.Super. 85, 481 A.2d 1314 (1984); *Commonwealth v. Thomas*, 328 Pa.Super. 393, 477 A.2d 501 (1984); *Commonwealth v. Shealey, supra; Commonwealth v. Boyd*, 315 Pa.Super. 308, 461 A.2d 1294 (1983). Even if one of these exceptions applies, however, the trial court must balance the need for

the evidence against its potential prejudice in order to determine its admissibility. *Commonwealth v. Ulatoski, supra; Commonwealth v. Shirey, supra; Commonwealth v. Middleton, supra.*

■ The lower court admitted the contested testimony as evidence going to show appellant's state of mind. "Evidence of an unrelated crime is admissible to show state of mind only when it is so close in time to the alleged offense as to have bearing upon [the accused's] state of mind at that time." *Commonwealth v. Martinez,* 301 Pa.Super. 121, 127, 447 A.2d 272, 275 (1982). (quotations omitted). While we recognize that evidence of *subsequent* offenses is less strongly probative of intent than *prior* offenses since it does not establish that a defendant possessed the requisite intent prior to the commission of the crime being tried, *id.,* we nonetheless agree with the lower court that the testimony admitted went to show the state of mind or intent of appellant at the time the victim was killed.

At trial, appellant denied that he and Mr. Pew had formulated a plan to rob someone, or that he had obtained the gun for purpose of robbing someone. In effect, appellant testified that he was an unwitting bystander, who just happened to be in Pew's company, when Pew suddenly held up the victim and shot him. Furthermore, appellant stated at trial that after he ran from the site of the murder, he did not see Pew later at the AM–PM store, or anywhere else until the next day. Obviously this testimony was in direct conflict with appellant's inculpatory statement made at the time of his arrest, and subsequently admitted at trial.

■ The testimony concerning the planned robbery of the AM–PM store took place close in time and space to the slaying of the victim. The same weapon was involved. The same persons were involved.

Because the testimony is relevant to events close in time and place to the shooting of [the victim], it tends to demonstrate the appellant's criminal intent with regard to the shooting. Moreover, the testimony shows the appel-

lant's continued association with [Pew] and participation in further criminal acts that evening. As such it tends to rebut the appellant's assertion that he lacked the necessary state of mind to establish second degree murder....

*Commonwealth v. Middleton, supra,* 320 Pa. at 550–51, 467 A.2d at 849–50. *See also Commonwealth v. Styles,* 494 Pa. 524, 431 A.2d 978 (1981); *Commonwealth v. Brown,* 489 Pa. 285, 414 A.2d 70 (1980); *Commonwealth v. Evans,* 460 Pa. 313, 333 A.2d 743 (1975); *Commonwealth v. Barnhart,* 290 Pa.Super. 182, 434 A.2d 191 (1981). We cannot say that the lower court abused its discretion in admitting the statement concerning the AM–PM store.[3]

■ Appellant also argues that he was placed in double jeopardy when the court returned him to the courtroom, after sentencing, and increased his sentence. After examining the notes of testimony at sentencing, we do not think that appellant's interpretation of what occurred at sentencing is correct.

The sentencing court first ordered that appellant undergo imprisonment for life on the murder conviction. Next, appellant received a ten (10) to twenty (20) year sentence on the robbery conviction, this sentence to be served *concurrently* with the murder sentence. Then, appellant was sentenced to two and one half (2½) to five (5) years on the firearms conviction, this sentence to be served *consecutively* to the murder and robbery sentences. The final sentence handed down by the court was a five (5) to ten (10) year prison term on the conspiracy conviction, this sentence to

---

**3.** Even were we to find that the admission of the testimony concerning the planned robbery of the AM–PM store was error, "where this court is convinced beyond a reasonable doubt that the error did not contribute to the verdict, we may hold that reversal is not required because the error was harmless." *Commonwealth v. Green,* 315 Pa.Super. 564, 576–77, 462 A.2d 736, 742 (1983). In the instant case, the jury could reasonably infer that appellant had been involved in another attempted crime, but that inference was rendered harmless in light of the overwhelming evidence of appellant's guilt, in particular his confession, presented by the Commonwealth. *Id. See also Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978).

also be served *consecutively* to the murder and robbery sentences.

While the court did indicate that the conspiracy sentence would run consecutively to the murder sentence and the robbery sentence, it failed to indicate whether the conspiracy sentence was to run consecutively to or concurrently with the firearms sentence. Apparently, realizing that the sentence as imposed could have been subject to two interpretations, the District Attorney inquired as follows:

> **MR. STEWART:** Your Honor, just so I am clear, the Court has sentenced this defendant to a term of life, and concurrent to that a ten to twenty-year term on the robbery; that he has sentenced the defendant to a consecutive term, then, of seven and a half to fifteen years?
>
> **THE COURT:** That is correct. That should be indicated that the consecutive term is seven and a half to fifteen years.

N.T., Sentencing, at 9–10.

Obviously the seven and one-half to fifteen year figure is the sum of the sentences on the firearms and conspiracy convictions. It seems clear to us that the court intended from the start of sentencing that the conspiracy sentence was intended to run consecutively to the murder, robbery, and firearms sentences.

After the sentencing colloquy was completed, the sentencing court apparently perceived a need for further clarification of the "seven and a half to fifteen year" statement above, so appellant, his counsel, and the district attorney were called back to the bar to ensure that the court's statement of its sentence previously imposed was clear. This clarification, which occurred a mere fourteen minutes later, is the basis for appellant's claim that his guarantee against double jeopardy was violated:

> **THE COURT:** All right. Just stand at the bar. Do you have the informations there?
>
> I have recalled the defendant to the bar, and he is standing in the presence of his counsel, Mr. Lappas, and the district attorney, Mr. Stewart, to ensure that our

statement of our sentence previously imposed is clear; and namely, that the sentence imposed to 2321 Criminal Docket 1983, on a charge of conspiracy, shall be served consecutively to the sentence imposed on the firearms charge at 2267(a) CD 1983, Count Two. That should take care of it.

**MR. STEWART:** That's fine, Your Honor.

**THE COURT:** We have already indicated that with the consecutive sentences, that the minimum sentence shall be seven and a half years and the maximum shall be fifteen.

**MR. LAPPAS:** Your Honor, I feel constraint [sic] to state for the record that that was not the way I understood the originally announced sentences of the Court on the non-homicide charges.

**THE COURT:** Well, I don't see how you could have understood it otherwise, because Mr. Stewart put the question to me very directly as to whether or not the consecutive sentences represented a minimum of seven and a half and a maximum of fifteen. The only thing that I hadn't recalled having stated specifically was in my sentence of 2321 CD 1983, that it was consecutive to the second count in 2267(a). Is there anything further?

**MR. STEWART:** Well, it was consecutive to that count, is that correct? I mean, I thought I understood the Court to be imposing a life sentence, and the robbery to run concurrently, that the firearms was to run consecutive to the life and robbery, and that the conspiracy charge was to run consecutive to the firearms charge.

**THE COURT:** That is precisely what I intended. I think that's what I stated. All right. I don't think it requires anything further.

N.T., Sentencing, at 11–12.

It again seems clear to us that appellant's sentence was never modified, let alone increased. Therefore, we find

appellant's argument that his double jeopardy rights were violated to be meritless.[4]

■ Although we find appellant's various contentions to be meritless, we cannot affirm the judgment of sentence as it now stands. Appellant was sentenced to concurrent terms of imprisonment of life for murder and ten to twenty years for robbery, followed by consecutive terms of two and one-half to five years for unlawful carrying of firearms and five to ten years for conspiracy. Based upon our review of the relevant case law, we are constrained to hold that appellant cannot be sentenced for both robbery and murder in the second degree.[5] *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981); *Commonwealth v. Thomas*, 335 Pa.Super. 323, 484 A.2d 155 (1984); *Commonwealth v. Gillespie*, 333 Pa.Super. 576, 482 A.2d 1023 (1984); *Commonwealth v. Hairston*, 323 Pa.Super. 449, 470 A.2d 1004 (1984) (Per Johnson, J., with one Judge concurring in the result); *Commonwealth v. Ruffin*, 317 Pa.Super. 126, 463 A.2d 1117 (1983); *Commonwealth v. Maddox*, 307 Pa.Super. 524, 453 A.2d 1010 (1982); *Commonwealth v. Fortune*, 305 Pa.Super. 441, 451 A.2d 729 (1982). *See also Commonwealth v. McDuffie*, 499 Pa. 325, 453 A.2d 331 (1982); *Commonwealth v. Colon*, 496 Pa. 650, 437 A.2d 1228 (1981).

■ Because appellant's sentence of life imprisonment for murder in the second degree is mandatory and because appellant was sentenced to the maximum terms available

---

**4.** Even if we agreed that the court modified appellant's sentence, given the immediacy of the "change" and the fact that the sentence as recorded shows the conspiracy conviction to be consecutive to both the murder and robbery convictions *and* the firearms conviction, we would find no violation of appellant's double jeopardy rights. *See, e.g., Commonwealth v. Isabell*, 503 Pa. 2, 467 A.2d 1287 (1983); *Commonwealth v. Martin*, 346 Pa.Super. 129, 499 A.2d 344 (1985); *Commonwealth v. Fleming*, 332 Pa.Super. 118, 480 A.2d 1214 (1984); *Commonwealth v. Gallagher*, 296 Pa.Super. 382, 442 A.2d 820 (1982).

**5.** It is well settled that the illegality of sentence is not waivable and may be raised *sua sponte* by the reviewing court. *Commonwealth v. Johnston*, 348 Pa.Super. 160, 501 A.2d 1119 (1985); *Commonwealth v. Fulton*, 315 Pa.Super. 420, 462 A.2d 265 (1983); *Commonwealth v. Roach*, 307 Pa.Super. 506, 453 A.2d 1001 (1982); *Commonwealth v. Gilliam*, 302 Pa.Super. 50, 448 A.2d 89 (1982).

under the sentencing code for his convictions for conspiracy and possession of an instrument of crime, it is clear that the concurrent sentence of five to ten years for robbery did not affect the length of the other sentences imposed upon appellant. *Commonwealth v. Gordon,* 329 Pa.Super. 42, 477 A.2d 1342 (1984); *Commonwealth v. Ruffin, supra.* Therefore, we need not remand but will instead vacate the sentence imposed upon appellant for robbery.

Judgment of sentence for murder in the second degree, conspiracy, and possession of an instrument of crime is affirmed. The separate sentence for robbery is vacated.