621 A.2d 1046
**COMMONWEALTH of Pennsylvania**

v.

**William HOLLOMAN, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 29, 1992.

Filed March 22, 1993.

74

Louis Lipschitz, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before WIEAND, OLSZEWSKI and HOFFMAN, JJ.

WIEAND, Judge.

William Holloman, Jr. was tried by jury and was found guilty of robbery, aggravated assault, theft by receiving stolen property, possession of an instrument of crime and criminal conspiracy.[1] Post-trial and supplemental post-trial motions were denied, and Holloman was sentenced to serve a term of imprisonment for not less than five (5) years nor more than ten (10) years.[2] On direct appeal from the judgment of sentence, Holloman argues that a combination of trial court errors and improper conduct by the prosecuting attorney entitles him to a new trial.

On July 3, 1989, at or about 10:15 p.m., according to the Commonwealth's evidence, appellant and Michael Rouse gained access to an office maintained by Rachael Thomas in an apartment building owned by her at 4240 Old York Road,

1. Holloman was tried jointly with a co-defendant, Michael Rouse. Rouse was also convicted of robbery and criminal conspiracy but acquitted of aggravated assault, theft by receiving stolen property and possession of an instrument of crime.

2. This sentence followed a motion to modify sentence after the trial court had initially imposed a sentence of imprisonment for not less than ten (10) years nor more than twenty (20) years.

Philadelphia. Rouse had been employed as a maintenance man by Thomas and apparently had a key by which entrance was effected. Appellant found Thomas in an adjacent bathroom, where he held a gun to her head while Rouse removed cash and jewelry. When Thomas began to struggle with appellant, he punched her in the face and jaw, and the gun was discharged. At that point, Rouse shouted, "Come on, man, let's go, we got enough." His voice was recognized by Thomas. Thereafter, the robbers fled the building.

Although Thomas called the police after the robbers had fled, she did not disclose immediately that she had recognized Rouse's voice. Instead, by speaking with Rouse's wife, she was able to obtain a return of some of the property which had been taken. Included in the laundry bag by which the property was returned to her was identification belonging to appellant. Subsequently, Thomas told police that she had recognized Rouse as one of the robbers and was able to identify appellant from a photograph as the second robber. A search of appellant's apartment produced a gun which had been removed from Thomas's office, cash in the amount of $375.00, and jewelry which had been taken in the robbery. During the search, police also found sixty (60) vials of crack cocaine and various items of drug paraphernalia. Following the search of his apartment, appellant was placed under arrest.

During direct examination at trial of Detective John Romana, a Commonwealth witness, the prosecuting attorney asked about statements made by appellant following his arrest. The following occurred:

Q. Did you have occasion after arresting Mr. Holloman to speak with him?

A. Yes, ma'am, I did.

Q. And what if anything did he tell you?

MR. LIPSCHITZ: Objected to.

THE COURT: Objection overruled.

BY MS. WEINER:

Q. Go ahead.

78

A. I warned Mr. Holloman of his Constitutional Rights as per police card 75–Misc–3. He would not talk to me about anything concerning the robbery, but he did lay claim to the drugs that were found.

In response to defense objections to this testimony, the trial court instructed the jury as follows:

> THE COURT: Members of the Jury, the witness indicated that Mr. Holloman refused to make any statement when he was arrested. He doesn't have to say anything, he has a perfect right not to say anything and to keep quiet if he wishes to and under the law that cannot be used against him. You will ignore that comment.
>
> All right, continue.

 "It is a clear violation of the accused's constitutional right against self-incrimination to make a reference at trial to his silence while in police custody." *Commonwealth v. Gbur*, 327 Pa.Super. 18, 23, 474 A.2d 1151, 1154 (1984). See also: *Commonwealth v. Singletary*, 478 Pa. 610, 387 A.2d 656 (1978); *Commonwealth v. Haideman*, 449 Pa. 367, 296 A.2d 765 (1972). In some instances, however, a prompt cautionary instruction may be sufficient to overcome an improper reference to a defendant's post-arrest silence which might otherwise result in reversible error. *Commonwealth v. Anderjack*, 271 Pa.Super. 334, 341–344, 413 A.2d 693, 697–698 (1979). See also: *Commonwealth v. Maloney*, 469 Pa. 342, 349, 365 A.2d 1237, 1241 (1976); *Commonwealth v. Gbur, supra* 327 Pa.Super. at 24, 474 A.2d at 1154; *Commonwealth v. Williams*, 252 Pa.Super. 435, 446, 381 A.2d 1285, 1291 (1977). Instantly, the witness's remark about appellant's post-arrest silence was brief. It does not appear that the remark was intentionally solicited by the prosecuting attorney, nor did the prosecutor make any attempt to exploit the remark. We conclude, therefore, that the reference to appellant's silence following arrest does not require a new trial.

 Appellant also complains that it was error for the trial court, over defense objection, to allow evidence that drugs

were found in his apartment.[3] The law pertaining to evidence
of criminal conduct other than that for which a defendant is
being tried was summarized by the Pennsylvania Supreme
Court in *Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835
(1989), as follows:

> Evidence of a defendant's distinct crimes are not **general-
> ly** admissible against a defendant **solely** to show his bad
> character or his propensity for committing criminal acts, as
> proof of the commission of one offense is not **generally**
> proof of the commission of another. *Commonwealth v.
> Lark*, 518 Pa. 290, 543 A.2d 491, 497 (1988). However, this
> general proscription against admission of a defendant's dis-
> tinct criminal acts is subject to numerous exceptions where
> special circumstances exist which render such evidence rele-
> vant for some legitimate evidentiary reason and not merely
> to prejudice the defendant by showing him to be a person of
> bad character. Some of the exceptions that this Court has
> recognized in the past as legitimate bases for admitting
> evidence of a defendant's distinct crimes include (but are
> not limited to): (1) motive; (2) intent; (3) absence of
> mistake or accident; (4) a common scheme, plan or design
> embracing commission of two or more crimes so related to
> each other that proof of one naturally tends to prove the
> others; (5) to establish the identity of the person charged
> with the commission of the crime on trial where there is
> such a logical connection between the crimes that proof of
> one will naturally tend to show that the accused is the
> person who committed the other; (6) to impeach the credi-
> bility of a defendant who testifies in his trial; (7) situations
> where defendant's prior criminal history had been used by
> him to threaten or intimidate the victim; (8) situations
> where the distinct crimes were part of a chain or sequence
> of events which formed the history of the case and were
> part of its natural development (sometimes called "res ges-

**3.** Appellant had been charged initially with the illegal possession of
drugs, but at trial the prosecuting attorney elected not to proceed with
such charges. The trial court, however, made a pre-trial ruling that the
Commonwealth would nevertheless be permitted to introduce evidence
of the drugs found in appellant's apartment.

tae" exception). *See Commonwealth v. Lark, supra,* 518 Pa. at 302, 543 A.2d at 497 and cases cited therein, *and Commonwealth v. Randall,* 515 Pa. 410, 528 A.2d 1326 (1987). *Id.* 521 Pa. at 177, 555 A.2d at 840. See also: *Commonwealth v. Tedford,* 523 Pa. 305, 329, 567 A.2d 610, 621 (1989); *Commonwealth v. Donahue,* 519 Pa. 532, 539–541, 549 A.2d 121, 125–126 (1988). However,

> [e]ven if a particular exception applies, the trial court must balance the need for the evidence against its potential prejudice in order to determine its admissibility. *Commonwealth v. Shirey,* 333 Pa.Super. 85, 481 A.2d 1314 (1984), appeal after remand, 343 Pa.Super. 189, 494 A.2d 420 (1985) overruled on other grounds by *Commonwealth v. Anderson,* 379 Pa.Super. 589, 550 A.2d 807 (1988). A trial court's decision to admit evidence of other crimes committed by a defendant will not be reversed on appeal unless the trial court abused its discretion. *Commonwealth v. Green,* 351 Pa.Super. 170, 505 A.2d 321 (1986).

*Commonwealth v. Nelson,* 389 Pa.Super. 417, 425, 567 A.2d 673, 677 (1989). See also: *Commonwealth v. Billa, supra* 521 Pa. at 177–178, 555 A.2d at 840; *Commonwealth v. Lark,* 518 Pa. 290, 310, 543 A.2d 491, 501 (1988).

The Commonwealth contends that the presence of drugs and drug paraphernalia in appellant's apartment was relevant to show the history of the events on trial. In this regard, the Supreme Court has observed:

> Another "special circumstance" where evidence of other crimes may be relevant and admissible is where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts. *Commonwealth v. Murphy,* 346 Pa.Super. 438, 499 A.2d 1080, 1082 (1985), quoting *Commonwealth v. Williams,* 307 Pa. 134, 148, 160 A. 602, 607 (1932). This special circumstance, sometimes referred to as the "res gestae" exception to the general proscription against evidence of other crimes, is also known as the "complete story" rationale, **i.e.,** evidence of other criminal acts is admissible "to complete the story of the

crime on trial by proving its immediate context of happenings near in time and place." McCormick, **Evidence,** § 190 (1972 2d ed.); *Carter v. United States,* 549 F.2d 77 (8th Cir.1977); *United States v. Weeks,* 716 F.2d 830 (11th Cir.1983); *see also Commonwealth v. Coyle,* 415 Pa. 379, 389–91, 203 A.2d 782, 787 (1964) (evidence of other crimes admissible as these crimes were interwoven with crimes for which defendant was being prosecuted).

*Commonwealth v. Lark, supra,* 518 Pa. at 303–304, 543 A.2d at 497. See also: *Commonwealth v. Brown,* 462 Pa. 578, 590–591, 342 A.2d 84, 90 (1975); *Commonwealth v. Nolen,* 390 Pa.Super. 346, 352–353, 568 A.2d 686, 689–690 (1989), *allocatur granted,* 525 Pa. 644, 581 A.2d 570 (1990); *Commonwealth v. Murphy,* 346 Pa.Super. 438, 499 A.2d 1080 (1985).

■ The evidence in the instant case failed to establish that the sixty (60) vials of crack cocaine and drug paraphernalia found in appellant's apartment during the search by police had any connection with or relevance to the robbery with which appellant had been charged. Thus, the presence of the drugs did not provide enlightenment to the jury in any way regarding whether it was appellant who had participated in the robbery of Thomas's office. Because of the absence of relevance, the jury should not have been allowed to consider the presence of drugs in appellant's apartment. It served only to prejudice appellant unfairly. See: *Commonwealth v. Lee,* 297 Pa.Super. 216, 443 A.2d 804 (1982). See also: *Commonwealth v. Martinez,* 301 Pa.Super. 121, 447 A.2d 272 (1982); *Commonwealth v. Hude,* 256 Pa.Super. 439, 390 A.2d 183 (1978).

The prosecuting attorney not only elicited explicit testimony regarding the finding of the drugs, but thereafter she was allowed to cross-examine appellant about whether he intended to use them or sell them. Finally, in summation to the jury, the prosecuting attorney argued:

July 12th of 1989 you heard from Detective Romano a search was made of William Holloman's residence, 4705 Greene Street and what is recovered? Her jewelry, her gun and his own stash. He has his own gun, his own ammunition, his own crack, money, packets, vials, scales.

Guns Are Us, 4705 Greene Street. This is a man who tells you you should have pity on him, you should feel sorry for him. You are going to hurt his young life. [A] man who thinks he is the law—above the law. You heard him testify. It is all a big joke.

. . . .

Members of the Jury, let's talk about Mr. Holloman, Mr. I-am-the-law Holloman, Billy. No, he is not Billy. Mr. Defendant Holloman who has all these guns in his house, his crack, his cute little children in that same house and his wife? Why do you have to buy stuff on the street? You couldn't get it legitimately, you don't have a right to buy a gun? No. You don't have a right to carry a sawed-off shotgun which is illegal in Pennsylvania? Are you a dealer? I'm not saying that. Are you a user? No, I'm not saying that. He is a poor, unfortunate black that has been unjustly accused?

All of this served no proper purpose. It permitted the prosecution to portray appellant as a man of bad character, a criminal, who had broken and had no respect for the drug law, while shedding no light on appellant's guilt or innocence of the charges for which he was being tried. This was clearly and unfairly prejudicial. We hold, therefore, that the trial court erred when it allowed the Commonwealth to produce evidence that drugs were found in appellant's apartment while police were executing a warrant to search for the fruits of a robbery.

■ A new trial is also required because of the prosecuting attorney's refusal to accept and her repeated attempts to override the trial court's ruling that appellant's failure to appear on the first day of trial could not be used as evidence of guilt. A jury had been selected on Wednesday, July 3, 1991, and trial was scheduled to begin on Friday, July 5, 1991, after the holiday. Appellant was present on July 3 but failed to appear on July 5. Therefore, the taking of testimony was continued until Monday, July 8, 1991. On that day appellant appeared and accounted for his absence on Friday, explaining to the court out of the hearing of the jury:

Thursday on the holiday, I got a little carried away drinking and I didn't have a way back and then I had my father get in contact with Mr. Lipschitz and he had to pay my fare back.

On the third day of trial, while cross-examining appellant, the prosecuting attorney initiated the following:

Q. Sir, do you remember picking a jury last week on July 3rd. You were here for that, weren't you?

A. I didn't pick it, no.

Q. You were here, weren't you?

A. Yeah.

Q. You weren't here on Friday, were you?

A. No.

Q. We missed you Friday. Where were you, sir?

MR. LIPSCHITZ: I object to that.

THE COURT: Objection sustained.

BY MS. WEINER:

Q. So, while the jury was here all day Friday waiting for you you weren't here, were you?

MR. LIPSCHITZ: I object to that statement, argument, it is improper.

THE COURT: Objection sustained.

BY MS. WEINER:

Q. When the jury was sworn you weren't here, were you?

MR. LIPSCHITZ: I object.

THE COURT: Sustained.

BY MS. WEINER:

Q. You didn't show up because you were guilty, did you?

A. No.

MR. LIPSCHITZ: I object.

JUROR NO. 12: I can't hear. I can't hear.

THE COURT: Would you do the jurors a favor, speak up. Speak up.

JUROR NO. 14: No, no, it is her.

JUROR NO. 6: No, it is the DA.

THE COURT: Miss Weiner, speak up.

84

MS. WEINER: I will speak up.

BY MS. WEINER:

Q. You weren't here Friday were you?

A. No.

Q. You weren't in Philadelphia on Friday, were you?

A. No.

Q. Even though you knew you were on trial on Friday?

MR. LIPSCHITZ: I object, if your Honor please.

THE COURT: Objection sustained.

BY MS. WEINER:

Q. You went out of town before Friday?

MR. LIPSCHITZ: I object, it is repetitive.

THE COURT: Sustained, sustained, sustained.

BY MS. WEINER:

Q. Sir—

THE COURT: That was covered by the court specifically.

Finally, in her closing statement, the prosecuting attorney advanced the following argument:

What about Mr. Holloman? We were here when we picked this jury July 3rd, 1989–91, two years the anniversary of this crime. July 5th I was here; you were here; he was here. Where is Mr. Holloman? He is not even here. Is that the act of someone who is an innocent man? Again you are going to hear from the judge about that. What did he tell you? He told you from the stand, no, I didn't come to court on Friday. You know why? Because in his mind this is all a big joke. This is a big joke, the guns are a joke, the crack is a joke and I will live my life any way I see fit. You know, Members of the Jury, the joke is over because quite frankly July 4th of 1991 it is this woman's Independence Day. It is enough already for the fear and horror she has had to live with for two years now these people are finally before a court of law and now, Members of the Jury, it is your turn.

When a defense motion for mistrial was finally made, it was denied by the trial court.

In *Commonwealth v. Babbs,* 346 Pa.Super. 498, 499 A.2d 1111 (1985), the Superior Court held that the mere failure of a defendant to appear for trial, without evidence of flight or concealment, was an insufficient basis on which to base an inference of consciousness of guilt. The Court reasoned as follows:

> The rule of law in this Commonwealth is that "[w]hen a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis in connection with other proof from which guilt may be inferred." *Commonwealth v. Coyle,* 415 Pa. 379, 393, 203 A.2d 782, 789 (1964). Accord: *Commonwealth v. Whack,* 482 Pa. 137, 142–143, 393 A.2d 417, 419–420 (1978); *Commonwealth v. Tinsley,* 465 Pa. 329, 333, 350 A.2d 791, 792–793 (1976). This rule has not heretofore been expanded to permit an inference of guilt merely because a defendant has failed to appear for trial. A failure to appear on the day set for trial does not have the same connotation as pre-arrest flight or concealment and cannot be said to point unerringly to consciousness of guilt.

*Id.* at 502, 499 A.2d at 1113. See also: *Commonwealth v. Carter,* 409 Pa.Super. 184, 193, 597 A.2d 1156, 1160 (1991); *Commonwealth v. Barnes,* 406 Pa.Super. 58, 61–62, 593 A.2d 868, 869–870 (1991).

Here, there was no evidence that appellant had fled or attempted to conceal his whereabouts to avoid prosecution. His failure to appear on the first day of trial was explained to the court but was not heard by the jury. The prosecuting attorney thereafter questioned appellant vigorously about his absence from court, ignored several rulings by the trial court which sustained defense objections to her line of questioning, and, finally, asked the jury in closing to consider whether appellant's failure to appear was the act of an innocent man.

The prosecuting attorney also told the jury that the trial court would give them an instruction pertaining to appellant's absence from court. The trial court, in fact, gave an instruction to the jury on flight and the inference of guilt which

might be drawn therefrom, but the court's instruction was directed to the conduct of the co-defendant, Rouse, who had attempted to flee to avoid prosecution. The court's instruction was as follows:

Now, there was evidence, particularly with respect to Mr. Rouse, including the—there was evidence which tended to show that he fled from the police and as I recall it he took off for Chester County—Chester shortly after the incident, but at any rate that is for you to decide and not for me to decide, but with respect to that evidence, the credibility and weight of that evidence is for you to decide. Generally speaking, when a crime has been committed and a person thinks he is or may be accused of committing it and he flees, such flight is a circumstance tending to prove the person is conscious of guilt. However, such flight does not necessarily show consciousness of guilt in every case. A person may flee for some other motive and may do so even though innocent. Where the evidence of flight in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case and especially upon motives which may have prompted the flight. You may not find the defendant guilty solely on the basis—that is Mr. Rouse—guilty solely on the basis of evidence of flight.

Although no instruction was given to the jury regarding appellant's failure to appear on the first day of trial, the jury was not specifically told that the court's instruction regarding flight did not pertain to him.

After careful consideration, we are persuaded that the prosecuting attorney's conduct, her disrespect for the court's rulings, and her attempt to have the jury infer guilt from Holloman's absence on the first day of trial, were of such character as to prejudice the defense unfairly and require the grant of a new trial. A jury, on this record, may well have determined that appellant's failure to appear on the day following the 4th of July was, without more, some evidence of guilt. Indeed, this was precisely what the prosecuting attorney attempted to have the jury do.

■ We find no merit in appellant's contention that his wife refused to testify as a defense witness because of threats by the prosecuting attorney to prosecute the wife if she testified on appellant's behalf. The prosecuting attorney's comments raising potential self-incrimination problems of the wife were made at side-bar, and the trial court thereafter appointed counsel to represent appellant's wife. The reason for her leaving the courtroom does not appear. Therefore, it cannot be said that the trial court abused its discretion when it required that the trial proceed without the witness.

■ "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." United States Constitution, Amendment VI. "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense. . . . This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023 (1967). See: *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297, 312 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense."). The defendant's Sixth Amendment right to call witnesses favorable to his defense mandates that such witnesses be free to testify without fear of prosecutorial retaliation. *United States v. Blackwell*, 694 F.2d 1325, 1334 (D.C.Cir.1982). See: *Commonwealth v. Jennings*, 225 Pa.Super. 489, 493, 311 A.2d 720, 722 (1973) ("[T]he accused is entitled to protection from the state's abuse of its prosecutorial machinery which tends to 'effectively drive the witness off the stand.' ").

■ "Under certain circumstances, intimidation or threats that dissuade a potential defense witness from testifying may infringe a defendant's due process rights." *United States v. Pinto*, 850 F.2d 927, 932 (2nd Cir.1988), *cert. denied*, 488 U.S. 867 and 932, 109 S.Ct. 174 and 323, 102 L.Ed.2d 143 and 341 (1988). See, e.g.: *Commonwealth v. Jennings, supra* (due process violated where prosecutor's warning to defense witness of right against self-incrimination was given in a

manner designed to exert such duress upon witness as to preclude free and voluntary choice whether to testify at defendant's trial). But compare: *Commonwealth v. DiGiacomo,* 463 Pa. 449, 345 A.2d 605 (1975) (prosecutor's justifiable warning to potential defense witness of right against self-incrimination did not violate due process where the warning was not in the nature of a threat). See also: *Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); *United States v. Jackson,* 935 F.2d 832, 846–847 (7th. Cir.1991).

> To establish a fourteenth amendment due process violation based on the denial of the right to compulsory process, a defendant must establish "more than the mere absence of testimony." *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982). There must be a plausible showing that an act by the government caused the loss or erosion of testimony that was both material and favorable to the defense. *Id.*

*Griffin v. Davies,* 929 F.2d 550, 553 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 223, 116 L.Ed.2d 180 (1991). Therefore, in order to prevail on such a due process claim, "an accused must, at a minimum, demonstrate some plausible nexus between the challenged governmental conduct and the absence of certain testimony." *United States v. Hoffman,* 832 F.2d 1299, 1303 (1st Cir.1987). See also: *United States v. Theresius Filippi,* 918 F.2d 244, 247 (1st Cir.1990).

In the instant case, appellant has not been able to establish a causal nexus between the conduct of the prosecutor and the absence of his wife's testimony. Our review of the record discloses that the assistant district attorney's comments regarding appellant's wife and her potential legal problems were directed to defense counsel and to the trial court, and not to appellant's wife. Indeed, there is no indication in the record that appellant's wife was even in the courtroom at the time the comments were made. Thus, the only support in the record for appellant's position is the speculation of defense counsel that appellant's wife "apparently heard" the prosecutor's remarks and, therefore, left the courtroom because of fear that she would be prosecuted. Without evidence, we are unwilling

to assume that the prosecuting attorney's comments intimidated appellant's wife and thereby deprived him of the benefit of her testimony at trial.[4]

Nevertheless, for the reasons cited, a new trial is necessary.

The judgment of sentence is reversed and the case is remanded for a new trial. Jurisdiction is not retained.

4. At the hearing on post-trial motions, appellant did not call his wife to testify, nor did he in any other way substantiate the allegation that his wife had been coerced by the Commonwealth not to testify. See: *Commonwealth v. DiGiacomo, supra* 463 Pa. at 453–454, 345 A.2d at 607.