J-A12041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DESMOND D. BRIFU, | |
| Appellant | No. 1134 MDA 2014 |

Appeal from the Judgment of Sentence entered February 6, 2014,
in the Court of Common Pleas of Centre County,
Criminal Division, at No(s): CP-14-CR-0000375-2013

BEFORE: BOWES, DONOHUE, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.: **FILED APRIL 30, 2015**

Desmond D. Brifu ("Appellant") appeals from the judgment of sentence imposed after a jury convicted him of burglary, theft by unlawful taking, and criminal trespass.[1] We affirm.

On January 18, 2013, officers from the State College Police Department received a report of a theft at Apartment No. 404 of the Legend apartment building in State College, Pennsylvania. Affidavit of Probable Cause, 1/29/13. Upon arriving, the officers spoke with the two residents of Apartment 404, who reported that two Apple Macbook Pro computers, a blue Apple iPad Mini, and an Apple iPhone were missing. *Id*. The officers obtained video surveillance footage of the hallway in front of Apartment 404,

---

[1] 18 Pa.C.S.A. § 3502(a)(1), 3921(a) and 3503(a)(1)(i).

which revealed a black male, later identified as Appellant, entering and exiting Apartment 404 three times, with some of the footage showing him holding a blue iPad. *Id*.

Appellant was subsequently arrested and charged with the aforementioned crimes. A jury trial commenced on November 21, 2013, at the conclusion of which the jury rendered its verdicts.

Following a hearing on February 6, 2014, the trial court sentenced Appellant to a term of imprisonment of one to two years for burglary, a consecutive two years of probation for theft by unlawful taking, and an additional two years of probation for criminal trespass to run concurrent to the probationary sentence imposed for theft by unlawful taking. Appellant filed a timely post-sentence motion, which the trial court denied by opinion and order dated June 12, 2014. Appellant filed a notice of appeal on July 9, 2014, and complied with a July 14, 2014 trial court order directing him to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.ap. 1925(b). On August 18, 2014, the trial court filed an opinion indicating that it would rely on the reasoning provided in its opinion and order of June 12, 2014 in lieu of a 1925(a) opinion.

Appellant presents six issues for our review:

A. Where the prosecution failed to prove that [Appellant]: (1) was not acting under a bona fide, reasonable mistake of fact; and (2) had the requisite intent to commit the crimes charged, was the evidence insufficient to sustain [Appellant's] convictions, thereby requiring that judgement be arrested?

B. Alternatively, did the trial court abuse its discretion by refusing to grant a new trial, as the verdict was against the weight of the evidence?

C. Where: (1) A critical defense witness working as a student teacher in Philadelphia had a conflict with physically appearing at trial in Centre County; and (2) the defense witness was available to testify via Skype, did the trial court abuse its discretion, err and violate [Appellant's] right to a fair trial and to due process of law, as guaranteed by the Constitution of the United States, as well as the Constitution of the Commonwealth of Pennsylvania, by refusing to permit the defense witness to testify via Skype?

D. Where the Commonwealth intimidated and threatened a defense witness who provided a statement to the police that was consistent with [Appellant's] defense, did the trial court err by refusing to grant [Appellant's] motion to dismiss and/or failing to award a new trial based on prosecutorial misconduct.

E. Where members of the District Attorney's office who were watching trial attempted to convey their personal opinion and influence the jury by scoffing, making faces and making improper comments reflecting their personal opinion as to the credibility of various witnesses and arguments, did the trial court abuse its discretion and err by failing to vacate [Appellant's] conviction based on prosecutorial misconduct or, alternatively, by refusing to grant a new trial?

F. Where the trial court sentenced [Appellant] for the charge of theft by unlawful taking, which was the offense that [Appellant] allegedly intended to commit after the alleged burglarious entry, to a sentence to be served consecutively to the sentence imposed for the conviction of burglary, did the consecutive sentence imposed on the charge of theft by unlawful taking render the sentence illegal?

Appellant's Brief at 5-6.

In his first issue, Appellant argues that the evidence was insufficient to support his convictions for burglary, theft by unlawful taking, and criminal trespass. When reviewing a challenge to the sufficiency of the evidence, we are bound by the following:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Tarrach***, 42 A.3d 342, 345 (Pa. Super. 2012).

To support Appellant's conviction for burglary pursuant to 18 Pa.C.S.A. § 3502(a)(1), the Commonwealth was required to prove that Appellant "with the intent to commit a crime therein ... enter[ed] a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present."

To sustain the conviction for theft by unlawful taking pursuant to 18 Pa.C.S.A. § 3921(a), the Commonwealth was required to demonstrate that Appellant "unlawfully [took], or exercise[d] unlawful control over, movable property of another with intent to deprive him thereof."

Finally, to sustain the conviction for criminal trespass pursuant to 18 Pa.C.S.A. § 3503(a)(1)(i), the Commonwealth was required to demonstrate

- 4 -

that Appellant, "knowing that he [was] not licensed or privileged to do so, ... enter[ed] any building or occupied structure or separately secured or occupied portion thereof."

Appellant argues that the Commonwealth failed to prove, beyond a reasonable doubt, that he possessed the requisite intent to commit the above crimes. Appellant's Brief at 18-27. Specifically, Appellant maintains that he was acting under a mistake of fact when he entered Apartment 404 and removed the electronic equipment. *Id*. He asserts that he believed that the apartment belonged to his friend, Lauren Galiney, and that he intended to play a practical joke on her by removing her property leading her to believe it was stolen. *Id*. at 22. Appellant contends that the Commonwealth failed to disprove that he was acting under a mistake of fact when he removed the electronic equipment from Apartment 404, and therefore the evidence was insufficient to support his convictions.

18 Pa.C.S.A. § 304 provides:

Ignorance or mistake as to a matter of fact, for which there is reasonable explanation or excuse, is a defense if:

(1) the ignorance or mistake negatives the intent, knowledge, belief, recklessness, or negligence required to establish a material element of the offense; or

(2) the law provides that the state of mind established by such ignorance or mistake constitutes a defense.

Thus, "a bona fide, reasonable mistake of fact may, under certain circumstances, negate the element of criminal intent." *Commonwealth v.*

*Namack*, 663 A.2d 191, 194 (Pa. Super. 1995) (citations and internal quotations omitted). "It is not necessary that the facts be as the actor believed them to be; it is only necessary that he have a bona fide and reasonable belief in the existence of facts which, if they did exist, would render an act innocent." *Id*. "When evidence of a mistake of fact is introduced, the Commonwealth retains the burden of proving the necessary criminal intent beyond a reasonable doubt. In other words, the Commonwealth must prove either the absence of a bona fide, reasonable mistake, or that the mistake alleged would not have negated the intent necessary to prove the crime charged." *Id*.

Here, the trial court, finding the evidence sufficient to support Appellant's convictions, explained:

> [T]he Commonwealth presented sufficient circumstantial evidence of [Appellant's] intent to obtain a conviction on all three charges. This evidence included the security camera footage shown at trial, which appeared to show [Appellant] trying the apartment door, entering and leaving the apartment multiple times while turning his head away from the cameras and/or covering his face with the hood of his sweatshirt, and leaving the building and not returning after exiting the apartment for the final time. The Commonwealth also presented the testimony of the victims that their personal effects and photographs are displayed prominently throughout the apartment, making it highly likely someone entering the apartment would be able to easily ascertain the identity of the residents. ...
>
> The evidence presented, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to permit the jury to make the determination [that] Appellant's alleged mistake of fact either did not exist, was not reasonable

or bona fide, or did not negate the intent of the crimes with which he was charged.

Trial Court Opinion, 6/12/14, at 9-10.

Upon review, we find no error in the trial court's determination. Although Appellant asserted that he believed that his friend Lauren Galiney resided in Apartment 404, the Commonwealth presented sufficient circumstantial evidence from which a jury could have concluded that Appellant was not operating under a bona fide and reasonable mistake.

At trial, Officer Bradley testified that the video surveillance footage taken in the hallway outside Apartment 404 revealed that Appellant entered and exited the apartment multiple times, holding electronic equipment, and that on more than one occasion, while in the hallway, he covered his head with the hood of his sweatshirt, and moved in such a way as to obscure his face from the video camera. N.T., 11/21/13, at 171-174. Moreover, as the trial court observed, Appellant removed *two* Apple Macbook Pro computers from the apartment, from which the jury could conclude that Appellant could not have reasonably believed, in good faith, that the duplicate items belonged solely to Ms. Galiney. Based on this evidence, along with the testimony of the victims that multiple photographs of them were displayed prominently in the apartment, the jury could have reasonably concluded that Appellant was not acting under a mistake of fact when he entered the apartment and removed the electronic equipment. *Id*. at 109-110; 123-124.

Appellant next raises a challenge to the weight of the evidence. Our scrutiny of whether a verdict is against the weight of the evidence is governed by the principles set forth in **Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003) (citations omitted):

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

In his weight claim, Appellant argues that the evidence demonstrates that he did not act in a furtive manner when he entered Apartment 404, and that based on his open and conspicuous entry into the apartment, the jury could not have believed that he intended to commit a crime. Appellant's Brief at 27-31. Appellant references the video surveillance footage depicting his entry into Apartment 404 multiple times, in full view of, and later accompanied by, several other individuals with whom he had been attending a party at an adjacent apartment. Appellant's Brief at 27-30. Additionally, Appellant relies on the testimony of Marielle Bellini, who stated that she was asleep in Apartment 404 at the time of the incident, and testified that she

heard voices and laughter in her apartment. N.T., 11/21/13, at 128-129. Appellant argues that the video evidence, and the testimony of Ms. Bellini, indicate that he made no effort to be surreptitious or conceal his presence in the apartment, that his actions did not comport with that of a person intending to commit a crime, and therefore any conclusion that he entered the apartment for purposes of stealing the electronic equipment, was against the weight of the evidence. Appellant's Brief at 27-30.

"[I]ssues of credibility are left to the trier of fact; the jury is free to accept all, part, or none of the witness testimony." *Commonwealth v. Russell*, 665 A.2d 1239, 1246-1247 (Pa. Super. 1995) (citations omitted). Here, the jury found the evidence presented by the Commonwealth to be credible. The Commonwealth presented video footage which showed Appellant enter Apartment 404 three times, at least once when nobody else was in the hallway to observe him, and when he exited the apartment, he made movements as though to conceal his face from the camera. N.T., 11/21/13, at 174. The fact that Appellant later entered Apartment 404 in full view of other partygoers would not preclude the jury from concluding that Appellant's intent was to steal property. Cole Feindt, one of the individuals in the hallway and who briefly accompanied Appellant into the apartment, testified that Appellant asked him for assistance in removing a television from the apartment as a "prank", and that he believed that Appellant was playing a trick on a friend. *Id*. at 270-273. He testified that he did not know that Appellant had previously entered the apartment and

removed electronic items, which he hid under his coat. *Id*. at 273-276. From this testimony and evidence, the jury could have reasonably inferred that Appellant acted under the ruse of playing a prank when he entered the apartment within view of eyewitnesses, and that his method or *modus operandi* for the commission of the crimes was to deceive onlookers into believing that he was playing a practical joke. The jury, within its province as fact finder, did not find credible Appellant's version of events, concluding instead that Appellant entered the apartment with the intent to steal property. We will not disturb such credibility determinations on appeal. Upon review, we find no abuse of discretion in the trial court's determination that the verdict was not so contrary to the evidence as to shock one's sense of justice.

In his third issue, Appellant argues that the trial court erred in rejecting his motion in limine, requesting to have Lauren Galiney testify via Skype because she was unable to physically appear at trial in Centre County due to academic obligations in the Greater Philadelphia area.[2] Appellant's Brief at 31-37.[3]

_____

[2] Skype is an internet communication service that provides live, two-way audio and video communication.... Skype permits individuals using webcams to see each other while conversing over the internet. During the live-streaming communication, the images recorded by a webcam appear on the other user's monitor screen. Any person within eyesight and earshot of the computer monitor can observe the participant's image and hear

*(Footnote Continued Next Page)*

The trial court rejected Appellant's request to have Ms. Galiney testify via Skype, reasoning that since Ms. Galiney resided in the Commonwealth, Appellant could instead subpoena her and thereby mandate her appearance.

---

*(Footnote Continued)* ———————

his or her words. In other words, Skype offers a program that permits a person to see and hear another person, who is in a different location, using a webcam and the internet.

***Commonwealth v. Levy***, 83 A.3d 457, 463 (Pa. Super. 2013)

[3] Appellant presented the following letter to the trial court from Lauren Galiney in support of his request to have her testify via Skype:

I am currently enrolled as a Penn State student and am completing my student teaching in the Greater Philadelphia area. This is a fifteen credit practicum and is mandatory for Education majors to graduate as a certified teacher. Being involved in this practicum student teachers are expected to teach everyday for the entire fifteen weeks of study, with particular emphasis on the tail end of the course. The last four weeks of the practicum (which we are currently in) are the most vital to my final grade, which is contingent on my graduating in December. There is one core unit of study that we must prepare and teach fully in order to be presented a final grade for the semester, it is imperative we do not miss any teaching days during this unit of study. The trial date happens to fall within the perimeters of my teaching unit, therefore it would be impossible for me to miss a full day and appear in court without it affecting my overall grade and inevitably my graduating as a certified teacher. I would be able to take a phone or skype call on the trial date on a scheduled break during my day, or more preferably after school lets out around 3 p.m. I would appreciate the opportunity to testify via call or skype seeing as that I am at such a vital point in my education.

Letter from Lauren Galiney, 11/11/13.

- 11 -

Specifically, at the hearing on Appellant's motion, the following exchange occurred:

| | |
|---|---|
| Appellant's Counsel: | [Ms. Galiney] is in New Jersey [and a subpoena] is just not enforceable because its out of state. ... And to guarantee, I need a court order ... from New Jersey. And that's not going to happen. ... I mean, she's not avoiding us. But if you read her email, she's in her practical with student teaching and is very very very concerned about missing one day and articulated for us why she's unavailable. |
| Trial Court: | Well, she's in the greater Philadelphia area, right, for student teaching. |
| Appellant's Counsel: | I thought she was in New Jersey. |
| Trial Court: | I'm just reading your motion, it says greater Philadelphia area. |
| Appellant's Counsel: | ... I thought it was New Jersey because maybe that's where her hometown is. |
| Trial Court: | Maybe she's doing an internship in greater Philadelphia. ... [W]e can serve her on subpoena while she's in the state. Just like if there was someone that was from New Jersey and was a Penn State student in State College, you can serve them a subpoena here while they're in State College. |
| Appellant's Counsel: | Right. ... I could get her. Yes. ... I know she lives in New Jersey. |
| Trial Court: | I think it's important, especially if you're saying that she's a critical witness, that she be here for the jury to evaluate... |
| Appellant's Counsel: | I want her here, I want her here. She's key to me. I want her here too. |

- 12 -

*** 

| | |
|---|---|
| Trial Court: | If she's teaching in Philadelphia, why don't you just go and send someone down and serve her while she's down in Philadelphia ... Then she's in PA, she's been served with it. ... If she doesn't show up, then she's in contempt of court. ... I assume that if she's got a job teaching, she doesn't want to be in contempt of court and have whatever could happen to her teaching career based on the fact that she blew off a subpoena to testify. |
| Appellant's Counsel: | Yes. Maybe there's much to do about nothing here. So yes, maybe that's what I'll do. All right. I am going to have her served and then I guess I'm going to have her direct her call to chambers with any questions. |
| Trial Court: | I'd serve her and say you need to be there on Thursday at 8:30 or whatever time we're starting. |
| Appellant's Counsel: | ...[M]y specific request is that she be permitted [to] testify by Skype. ... And your Honor's ruling on that -- |
| Trial Court: | It will be denied. So, if she's in the Philadelphia area, you can serve her and she can be here. |
| Appellant's Counsel: | I shall serve her in Philadelphia. |
| Trial Court: | Subpoena her. Serve her and have her be here. And if she's worried about her teaching internship, the [trial court's] making her come here, it's not like she's just blowing off her teaching internship. |
| Appellant's Counsel: | That actually makes it a lot better. Okay good. |

J-A12041-15

N.T., 11/15/13, at 11-13.[4]

Based on the foregoing, the trial court denied Appellant's motion. The trial court explained:

> In the instant case, [Appellant] actually attempted to subpoena Ms. Galiney prior to the trial. Upon learning Ms. Galiney did not wish to appear in person due to an internship commitment, [Appellant] filed the Motion in Limine at issue. [The trial court] denied [Appellant's] motion, as Ms. Galiney was actually in the [S]tate of Pennsylvania and was therefore able to be properly served with a subpoena. Ultimately, [Appellant] released Ms. Galiney from her subpoena and she did not appear at trial.
>
> Both [Appellant] and the Commonwealth have the right to subpoena witnesses at trial. Although limited exceptions for testimony via video conference, telephone, video deposition, and trial transcripts do exist, none are applicable to this case, as Ms. Galiney was a living witness in a criminal case (not a child victim), and was able to be properly served with a subpoena in the state of Pennsylvania. Further, it is important for the jury to be able to view the witness as he or she testifies in order to make the necessary credibility determinations, especially in the instant matter where [Appellant] based his defense on the idea he meant to play a prank on Ms. Galiney, whom he allegedly believed lived in the apartment he entered. [The trial court] did not, therefore, err in denying [Appellant's] Motion in Limine, as it was ultimately the responsibility of [Appellant's] counsel to make

---

[4] Subsequently, Appellant sent email correspondence to Ms. Galiney dated 11/19/13, which read in pertinent part as follows:

> Dear Ms. Galiney, I understand you do not want to appear for the trial due to your teaching commitments. I am therefore not going to serve you with a subpoena. If you have any questions please call me.

Letter from Philip Masorti, 11/19/13. **See also** N.T., 11/21/13, at 14. Because Appellant's counsel opted not to subpoena her, Ms. Galiney was not present to testify at trial.

- 14 -

certain the witnesses critical to his client's defense were available and ready to testify at trial.

Trial Court Opinion, 6/12/14, at 3-4 (footnote omitted).

Appellant argues that the trial court erred in denying his motion in limine to have Ms. Galiney testify via Skype. "In evaluating the denial or grant of a motion in limine, our standard of review is well-settled. When ruling on a trial court's decision to grant or deny a motion in limine, we apply an evidentiary abuse of discretion standard of review." ***Commonwealth v. Belani***, 101 A.3d 1156, 1160 (Pa. Super. 2014). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record. ***Commonwealth v. Mendez***, 74 A.3d 256, 260 (Pa. Super. 2013).

Pa.R.Crim.P. 119 governs the use of two-way simultaneous audio-visual communication in criminal proceedings. It provides:

> **Use of Two-Way Simultaneous Audio-Visual Communication in Criminal Proceedings**.
>
> (A)  The court or issuing authority may use two-way simultaneous audio-visual communication at any criminal proceeding except:
>
>   (1)  preliminary hearings;
>
>   (2)  proceedings pursuant to Rule 569(A)(2)(b);
>
>   (3)  proceedings pursuant to Rules 595 and 597;

(4)  trials;

(5)  sentencing hearings;

(6)  parole, probation, and intermediate punishment revocation hearings; and

(7)  any proceeding in which the defendant has a constitutional or statutory right to be physically present.

(B)  The defendant may consent to any proceeding being conducted using two-way simultaneous audio-visual communication.

(C)  When counsel for the defendant is present, the defendant must be permitted to communicate fully and confidentially with defense counsel immediately prior to and during the proceeding.

Pa.R.Crim.P. 119.

When evaluating whether to permit two way audiovisual communication as opposed to in-person testimony in criminal cases, the primary consideration is to ensure that the defendant is not denied his constitutional right to confrontation. *See Commonwealth v. Atkinson*, 987 A.2d 743 (Pa. Super. 2009) (citations omitted).[5]

However, where, as here, it is the defendant who is requesting that his witness be permitted to testify remotely, violation of the defendant's rights

_____

[5] *See Maryland v. Craig*, 497 U.S. 836, 845–846, 110 S.Ct. 3157 (1990) ("[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured.").

under the Confrontation Clause no longer presents the same concern, as it is the defendant who seeks the accommodation. Accordingly, Pa.R.Crim.P. 119(B) provides that a defendant may consent to any proceeding being conducted using two-way video conferencing. Thus, it appears that the applicable rules of criminal procedure do not preclude testimony via video-conferencing software, if the defendant agrees, which he did in this case.

In the absence of any rules expressly addressing when a defendant wishes to present a witness via Skype, as with all evidentiary matters, the decision as to whether to permit such testimony falls within the discretion of the trial court. *See In Re. C.W.*, 960 A.2d 458, 469 (Pa. Super. 2008) ("trial court judges have wide discretion in the management and conduct of trial proceedings[;] [t]hus, we are most careful not to second-guess trial court judges in the exercise of their discretion to so manage").

Here, we find no abuse of discretion in the trial court's denial of Appellant's motion to have Ms. Galiney testify via Skype. While Appellant produced a letter from Ms. Galiney in which she expressed that due to her academic obligations in another part of the state she would be unable to testify at trial, the trial court did not find Ms. Galiney's letter compelling enough to exempt her from appearing in person pursuant to a subpoena. Rather, the trial court reasonably concluded that Ms. Galiney's academic obligations were not so burdensome or prohibitive that they could not be excused for her compliance with a judicially-issued subpoena. Appellant's subsequent decision not to pursue the subpoena, despite advising the trial

- 17 -

court that he would do so, does not entitle him to relief. Because we do not find the trial court's decision manifestly unreasonable or the result of bias, prejudice, ill will or partiality, Appellant's claim fails.

In his fourth issue, Appellant argues that the trial court erred when it refused to grant his motion to dismiss for prosecutorial misconduct, after learning that the Commonwealth threatened and intimidated Appellant's witness, Cole Feindt, several days prior to trial. Appellant's Brief at 37-45.[6]

In considering a claim of prosecutorial misconduct, once again, our standard of review is limited to whether the trial court abused its discretion. *See Commonwealth v. Baez*, 720 A.2d 711, 729 (1998) ("It is within the

---

[6] The Commonwealth contends that this claim is waived because Appellant did not object at trial. However, Appellant raised a claim of prosecutorial misconduct in a pre-trial motion to dismiss, requesting that the charges against Appellant be dismissed due to, *inter alia*, the Commonwealth's harassment of Mr. Feindt. *See* Motion to Dismiss for Prosecutorial Misconduct, 11/21/13. On November 21, 2013, the trial court denied the motion, with directions that Appellant re-file it as a post-trial motion. Trial Court Order, 11/22/13. Appellant complied with the trial court's directive and subsequently renewed his claim of prosecutorial misconduct in his post-sentence motion. Thus, we conclude that Appellant's claim of prosecutorial misconduct has been adequately preserved for appellate review.

However, on appeal, in support of his claim of prosecutorial misconduct, Appellant raises for the first time a new theory, i.e., that the prosecutor's intimidation of Mr. Feindt caused Mr. Feindt to become equivocal in his testimony at trial. Although Appellant presents this rationale for the first time on appeal, we conclude that given Appellant's pre-trial and post-trial motions asserting a general claim of prosecutorial misconduct, Appellant's claim has been adequately preserved for appellate review.

discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted.").

> The Pennsylvania Supreme Court has stated that "[t]he essence of a finding of prosecutorial misconduct is that the prosecutor, a person who holds a unique position of trust in our society, has abused that trust in order to prejudice and deliberately mislead [the factfinder]." **Commonwealth v. Pierce**, 645 A.2d 189, 197 (Pa. 1994). ... Prosecutorial misconduct will justify a new trial where the unavoidable effect of the conduct or language was to prejudice the factfinder to the extent that the factfinder was rendered incapable of fairly weighing the evidence and entering an objective verdict. If the prosecutorial misconduct contributed to the verdict, it will be deemed prejudicial and a new trial will be required.

**Commonwealth v. Francis**, 665 A.2d 821, 824 (Pa. Super. 1995).

Appellant argues that shortly before trial, the Commonwealth threatened Mr. Feindt with criminal prosecution based on video evidence that depicted Mr. Feindt accompanying Appellant into Apartment 404. Appellant maintains that the Commonwealth's threats of criminal prosecution resulted in the erosion of Mr. Feindt's testimony at trial, depriving Appellant of his constitutional right to call witnesses favorable to his defense without fear of prosecutorial retaliation. Appellant's Brief at 38-45. Accordingly,

Appellant asserts that the Commonwealth committed prosecutorial misconduct warranting dismissal of the charges against him.  *Id*.[7]

> In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor.  United States Constitution, Amendment VI.  The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense. ...  This right is a fundamental element of due process of law.  The defendant's Sixth Amendment right to call witnesses favorable to his defense mandates that such witnesses be free to testify without fear of prosecutorial retaliation.
>
> Under certain circumstances, intimidation or threats that dissuade a potential defense witness from testifying may infringe a defendant's due process rights.
>
> To establish a fourteenth amendment due process violation based on the denial of the right to compulsory process, a defendant must establish more than the mere absence of testimony.  There must be a plausible showing that an act by the government caused the loss or erosion of testimony that was both material and favorable to the defense.

---

[7] In **Commonwealth v. Cox**, 983 A.2d 666, 685 (Pa. 2009), our Supreme Court, discussing the meaning of prosecutorial misconduct, noted:

> The phrase 'prosecutorial misconduct' has been so abused as to lose any particular meaning.  The claim either sounds in a specific constitutional provision that the prosecutor allegedly violated or, more frequently, like most trial issues, it implicates the narrow review available under Fourteenth Amendment due process.  However, [t]he Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty.  The touchstone is the fairness of the trial, not the culpability of the prosecutor.

Therefore, in order to prevail on such a due process claim, an accused must, at a minimum, demonstrate some plausible nexus between the challenged governmental conduct and the absence of certain testimony.

***Commonwealth v. Holloman***, 621 A.2d 1046, 1053-1054 (Pa. Super. 1993) (citations and internal quotations omitted).

Appellant argues that as a result of the Commonwealth's intimidation, Mr. Feindt's testimony was eroded, with Mr. Feindt becoming equivocal at trial in the face of threats of prosecution. Appellant's Brief at 41. Specifically, Appellant claims that Mr. Feindt equivocated at trial in his statement that he believed Appellant committed a prank. ***Id***. at 39-42. Additionally, Appellant claims that the Commonwealth threatened Mr. Feindt into agreeing that his own conduct, when he entered into Apartment 404 with Appellant, was criminal in nature. ***Id***. at 40. Accordingly, Appellant asserts that the Commonwealth's threats interfered with his constitutional right to call witnesses favorable to his defense.

To prevail on such a due process claim, the accused "must, at a minimum, demonstrate some plausible nexus between the challenged governmental conduct and the absence of certain testimony." ***Holloman,*** 621 A.2d at 1054. Here, the record does not contain any support for Appellant's allegation that Mr. Feindt would have testified differently but for the Commonwealth's alleged threats. No post-trial proceeding was conducted at which Mr. Feindt testified that he altered his testimony because of the Commonwealth's threats of prosecution, or how he would have otherwise testified differently had he not felt threatened. Absent such

support in the record to substantiate Appellant's claim, a finding that Mr. Feindt was pressured to alter or amend his testimony would constitute only speculation, inadequate to support a claim of prosecutorial misconduct. ***See Holloman*** 621 A.2d at 1054 (holding that appellant did not establish a causal nexus between the conduct of the prosecutor and the absence of witness testimony where the only support in the record for appellant's position was based on speculation and assumption that the prosecuting attorney's comments intimidated the witness and thereby deprived him of the benefit of her testimony at trial; at the hearing on post-trial motions, appellant did not call the intimidated witness to testify, nor did appellant in any other way substantiate the allegation that the witness had been coerced by the Commonwealth not to testify).

Moreover, even if Appellant had established that the Commonwealth's actions resulted in an erosion of Mr. Feidnt's testimony and infringed upon his right to offer witnesses in his defense, any such error by the trial court in denying his claim of prosecutorial misconduct is harmless.

"Harmless error exists where:  (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that

the error could not have contributed to the verdict." ***Commonwealth v. Robinson***, 721 A.2d 344, 350 (Pa. 1999).

Appellant's sole defense at trial was that he believed his friend, Lauren Galiney, resided in Apartment 404, and that he removed the items from that apartment as part of a "prank." ***See, e.g.***, N.T., 11/21/13, at 270-283. To substantiate this defense, Appellant presented Mr. Feindt to testify that on the night of the incident, Appellant told him he was playing a "prank" when he entered Apartment 404. ***Id***.

To the extent that Mr. Feindt's testimony in support of Appellant's "prank" defense was eroded because of the Commonwealth's threats, the record reveals that Mr. Feindt's testimony with regard to the "prank" defense was merely cumulative of testimony presented by numerous other witnesses. Specifically, Officer Bradley testified at trial that when he interviewed Appellant at the police station, Appellant told him he had not intended to steal the items, and was committing a prank on a friend. ***Id***. at 194. Appellant's friend Jessica Wynn testified that Appellant and Laruen Galiney – the purported subject of the prank – had a "very friendly" relationship and would regularly joke around with each other. ***Id***. at 239. Additionally, Ahmed Sylla, Appellant's friend who was present on the night of the incident, testified unequivocally that Appellant told him "he was pulling a prank on his friend, Lauren." ***Id***. at 251. Given that Mr. Feindt's testimony as to the "prank" was merely cumulative of other testimony admitted at

trial, any erosion of Mr. Feindt's testimony as a result of the Commonwealth's threats was harmless.

In his fifth issue, Appellant argues that members of the District Attorney's office committed prosecutorial misconduct when, during trial, they attempted to influence the jury by displaying behavior demeaning to Appellant, voiced their personal opinions, and made gestures and motions in response to the testimony of various witnesses in a manner designed to influence the jury's opinions as to witness credibility, in such a way as to deny Appellant the right to a fair and impartial jury. Appellant's Brief at 45-55. In support of his claim, Appellant presented in his post-trial motion, two affidavits from Appellant and Appellant's father, which stated that members of the Centre County District Attorney's Office who were present in the courtroom to observe the proceedings, "rolled their eyes, snickered, scoffed and made facial expressions reflecting disbelief" and "otherwise impermissibly attempted to convey their personal opinion about the credibility of the several witnesses who testified at trial." *See* Appellant's Brief at 47-48. Appellant claims that his counsel was unaware of the majority of improper conduct during trial, and therefore was unable to raise a timely objection. However, Appellant notes that on at least one occasion

during trial, his counsel became aware of improper conduct by members of the District Attorney's office, which he brought to the trial court's attention.[8]

The trial court, finding that Appellant's claim of prosecutorial misconduct did not entitle him to relief, explained:

> [The trial court] did not observe any of the conduct alleged by defense counsel in his brief, nor did it observe any of the conduct alleged by [Appellant] or his father in the affidavits provided to [the trial court].  [Appellant's] counsel never raised an objection to any alleged behavior on the part of any of the members of the District Attorney's Office, nor did he in any way make the [trial court] aware of any perceived disturbances.
>
> Further, none of the jurors reported or mentioned any of this conduct to the [trial court] at any point.  At all times during the trial, the jurors appeared to be listening attentively to the witnesses, and did not appear to be distracted by anything from the gallery.  The [trial court] is satisfied the jury was not inappropriately influenced or distracted by any actions allegedly taken by any members of the audience in the gallery, and as such [Appellant] was not denied his rights to a fair trial.

---

[8] Appellant refers to the following exchange which, he claims, occurred when a member of the District Attorney's Office, sitting in the gallery, interfered with his cross-examination of a witness:

| Appellant's Counsel: | Your Honor, I'm going to ask that if the district attorney can't be quiet during my cross-examination ... Ask to request her [to] be removed from [the] courtroom. |
|---|---|
| Trial Court: | We'll have counsels that are in charge do the speaking. |

N.T., 11/21/13, at 162.

Trial Court Opinion, 6/12/14, at 12.

"[I]n the area of bystander misconduct, [the Pennsylvania Supreme Court has] held that it is primarily within the trial judge's discretion to determine whether the defendant was prejudiced by the misconduct." **Commonwealth v. Philistin**, 774 A.2d 741, 743 (Pa. 2001) (citations omitted).

> Misconduct in the courtroom is a serious matter. The onus is on the trial judge to avert or cure it: [I]t is the duty of the court to see that trial proceedings are conducted in an orderly manner and any disturbance or outbursts should be checked immediately by the court on its own motion. Misconduct on the part of a trial audience should never be tolerated and should immediately be suppressed in a manner as to impress upon the jury the impropriety and injustice of such conduct. The trial judge should take appropriate steps . . . to insure that the jurors will not be exposed to sources of information or opinion, or subject to influences, which might tend to affect their ability to render an impartial verdict on the evidence presented in court.

**Commonwealth v. Sojourner**, 408 A.2d 1100, 1105 (Pa. Super., 1978) (citations and internal quotations omitted).

Here, however, the trial court did not observe any of the alleged misconduct, and therefore did not have the opportunity to "avert or cure" it. Moreover, the trial court could reasonably have concluded, given that neither the court nor Appellant's counsel had perceived any misconduct, that the jury did not perceive it either, thus making it highly unlikely that any alleged misconduct had influenced the jury. On the single occasion when trial counsel did object on the record to a member of the district attorney's office

speaking at an inappropriate time, the trial court promptly instructed the Commonwealth to stop, and Appellant did not request any further curative instruction. In addition, aside from the single comment from Appellant's counsel requesting the district attorney's office to refrain from speaking, the record does not substantiate Appellant's other claims of misconduct within sight or hearing of the jury, to support a finding that Appellant was deprived of his right to a fair and impartial jury. Based on the record before us, we find no abuse of discretion in the trial court's determination.

In his sixth and final issue, Appellant argues that the trial court imposed an illegal sentence. Appellant's Brief at 55-61. Specifically, Appellant argues that the sentences for burglary and theft by unlawful taking should have merged. The trial court rejected this claim and explained:

> In the instant case, [Appellant] entered the apartment multiple times and, on each entry, took one or more items from the apartment. Had [Appellant] merely entered the apartment once and removed all of the items at the same time, [the trial court] agrees the crimes of Burglary and Theft by Unlawful Taking would merge and only one sentence could be imposed. However, because [Appellant] committed multiple acts of theft, [the trial court] did not err in sentencing him for both Burglary and Theft by Unlawful Taking.

Trial Court Opinion, 6/12/14, at 3.

Appellant argues that only a single criminal episode occurred, as evidenced by the fact that he was charged with only one count of burglary, and not multiple counts of burglary, despite his repeated entries into the apartment. Appellant's Brief at 59.

Whether [a defendant's] convictions merge for the purposes of sentencing is a question implicating the legality of his sentence. As such, our standard of review is de novo and the scope of our review is plenary.

Section 9765 of the Pennsylvania Sentencing Code provides as follows regarding the merger of crimes for sentencing purposes:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher[-]graded offense.

42 Pa.C.S. § 9765. Accordingly, merger is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other.

*Commonwealth v. Jenkins*, 96 A.3d 1055, 1056 (Pa. Super. 2014) (citations and internal quotations omitted).

"If the offenses stem from two different criminal acts, merger analysis is not required. In this regard, [t]he threshold question is whether [the] [a]ppellant committed one solitary criminal act. The answer to this question does not turn on whether there was a 'break in the chain' of criminal activity. Rather, the answer turns on whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime[.] If so, then the defendant has committed more than one criminal act. This focus is designed to prevent defendants from

receiving a volume discount on crime." ***Commonwealth v. Orie***, 88 A.3d 983, 1020 (Pa. Super. 2014).

Here, we agree with the trial court that Appellant committed multiple criminal acts beyond that necessary to establish the bare elements of theft by unlawful taking, when he entered the apartment on three separate occasions, and stole items each time. Although the time between the separate acts was relatively short, each time, Appellant reformulated the intent to enter the apartment for criminal purposes. Appellant is not entitled to a "volume discount" for his crimes simply because he managed to accomplish all of the acts within a relatively short period of time, and despite his assertions to the contrary, the fact that the Commonwealth opted to charge him with only one count of burglary does not alter the fact that he entered the apartment three separate and distinct times. Appellant's merger claim is without merit.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/2015