J-S81018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| EDGARDO YARIEL ALFARO-RODRIGUEZ | |
| Appellant | No. 497 MDA 2017 |

Appeal from the Judgment of Sentence Entered January 31, 2017
In the Court of Common Pleas of Lancaster County
Criminal Division at No.: CP-36-CR-0000738-2016

BEFORE:  PANELLA, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 27, 2018**

Appellant Edgardo Yariel Alfaro-Rodriguez appeals from the January 31, 2017 judgment of sentence entered in the Court of Common Pleas of Lancaster County ("trial court"), following his jury conviction for robbery (threatening immediate serious bodily injury) under Section 3701(a)(1)(ii) of the Crimes Code, 18 Pa.C.S.A. § 3701(a)(1)(ii).  Upon review, we affirm.

The facts and procedural history of this case are uncontroverted.  As the trial court aptly recounted:

> On December 2, 2015, at approximately 4:15 p.m., an individual with a partially covered face entered the Family Dollar store on Duke Street, pointed what appeared to be a handgun at an employee and demanded money.  The individual fled when an alarm sounded, but initially approached the entrance door and appear[ed] to try and push it open with his ungloved hands.  When

_____

[*] Retired Senior Judge assigned to the Superior Court.

the door did not open, the individual moved to the exit door and fled the store. Responding officers retrieved video surveillance footage and were able to process a latent writer's palm print from a sticker that was on the area of the door that the individual appeared to have touched. It was later determined that the print belonged to [Appellant].[1]

Detective Michael Gerace [(Lancaster City Bureau of Police)] had the opportunity to interview [Appellant] on January 27, 2016 in the presence of Detective Stanley Roche. That interview was recorded and played for the jury at trial pursuant to certain stipulations by the parties. Immediately prior to the interview beginning, Detective Gerace read [Appellant] his *Miranda*[2] rights and [Appellant] signed a waiver of those rights. During the interview, [Appellant] initially denied having been in the Family Dollar store subsequent to March of 2015 and specifically denied having been in the store in December 2015. However, when [Appellant] was asked to explain how his print was recovered from within the store, [Appellant] stated that he probably went into the store and did not remember. Later, [Appellant] stated that he was going to be honest and that he was in the store in November 2015 with a friend. Appellant repeatedly denied robbing the Family Dollar store, but eventually admitted that he probably was in the store on the same day of the robbery. Furthermore, despite never having been told that the individual in the surveillance video had his face covered, [Appellant] asked Detective Gerace pointedly if his face could be seen in the video.

At some point during the interview, [Appellant] suddenly stated "I don't want to talk no more, because it really wasn't me. It really wasn't me. I don't want to talk no more." Detective Gerace confirmed, stating "ok" and then asked "why, why don't you want to talk?" [Appellant] responded by repeating that while he probably went in the same day, he did not rob the store.

---

[1] Following his arrest on unrelated charges, Appellant was fingerprinted. His fingerprints matched the fingerprints lifted from the front door of the Family Dollar store.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966) (holding that statements obtained from defendants during interrogation in police-dominated atmosphere, made without full warning of applicable constitutional rights, were inadmissible as having been obtained in violation of Fifth Amendment privilege against self-incrimination).

[Appellant] stated again that he did not want to speak, but the interrogation continued.

Trial Court Opinion, 5/2/17, at 2-4 (internal citations and footnotes omitted) (footnotes 1 and 2 added). On April 21, 2016, Appellant filed an omnibus pretrial motion, which he amended on June 7, 2016. In the amended motion, Appellant sought to suppress all statements obtained from him by Detective Gerace following Appellant's affirmative invocation of his right to remain silent.

On the day of, but prior to the start of, trial, the court held a hearing on Appellant's pretrial suppression motion, following which the trial court granted in part and denied in part relief. Specifically, with respect to Appellant's constitutional privilege against self-incrimination, the trial court granted the suppression of any statement Appellant made to Detective Gerace after he invoked his right to remain silent for the second time. In other words, the trial court allowed the Commonwealth to introduce Appellant's statements to Detective Gerace "up to and including the responses after the first invocation" of his right against self-incrimination. N.T. Suppression, 11/28/16, at 38.

At trial, the trial court permitted the Commonwealth to play the video recording of Appellant's interview by Detective Gerace. In so doing, and over Appellant's repeated objections, the jury was permitted to hear Appellant's invocation of his Fifth Amendment right against self-incrimination, *i.e.*, Appellant's statements that he did not want to talk. **See** N.T. Trial, 11/29/16, at 149-50, 157, 165. Appellant moved for a mistrial, which the trial court denied. In addition, over Appellant's objections again, the trial court

permitted the Commonwealth's witnesses to point out to the jury the exact location on the video surveillance footage where Appellant touched the front door. *Id.* at 109-10, 119-20. Following trial, the jury found Appellant guilty of robbery. On January 31, 2017, the trial court sentenced Appellant to four to ten years' imprisonment. Appellant filed post-sentence motions, which the trial court denied. Appellant timely appealed to this Court. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, concluding, among other things, that, even if Appellant's Fifth Amendment rights against self-incrimination were violated, the error was harmless because "[t]he statements by [Appellant] after his first invocation of silence merely repeated, almost word for word, what he had previously stated." Trial Court Opinion, 5/2/17, at 8.

On appeal, Appellant presents three issues for our review:

I.   Did the trial court err in denying [Appellant's] motion to suppress his statement to police, from his first invocation of his right to remain silent, and in allowing the jury to hear that he told police he did not want to talk anymore?

II.  Did the trial court err in finding that the jury's verdict of guilty of robbery was against the weight of the evidence, where [Appellant] acknowledged that he had been in the Family Dollar store before, there were other unidentifiable prints recovered from the area of the door which the robber had touched, and [Appellant] did not match the store clerk's description of the robber?

III. Did the trial court err in denying defense counsel's repeated objections to the police officers identifying the location where the robbery suspect touched the "in" door of the

> Family Dollar store, where the best evidence of where the suspect touched the door was the video itself?

Appellant's Brief at 7 (unnecessary capitalization omitted). At the outset, we note that Appellant's first issue subsumes two distinct issues. First, he challenges the trial court's denial to suppress all statements solicited from him by Detective Gerace after he invoked his right to remain silent. Second, Appellant challenges the trial court's discretion to allow the Commonwealth to play to the jury the video recording of his interview with Detective Gerace where he can be heard invoking his Fifth Amendment right against self-incrimination.

We first address his suppression issue. As stated, Appellant argues that the trial court erred in failing to suppress all statements obtained from him by Detective Gerace after he invoked his right to remain silent. We agree.

In reviewing appeals from an order denying suppression, our standard of review is limited to determining

> whether [the trial court's] factual findings are supported by the record and whether [its] legal conclusions drawn from those facts are correct. When reviewing the rulings of a [trial] court, the appellate court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the [trial] court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Griffin**, 116 A.3d 1139, 1142 (Pa. Super. 2015). Our scope of review is limited to the evidence presented at the suppression hearing. **In the interest of L.J.**, 79 A.3d 1073, 1088-89 (Pa. 2013).

It is settled that a suspect is entitled to **Miranda** warnings prior to a custodial interrogation.[3]  **Commonwealth v. Boyer**, 962 A.2d 1213, 1216 (Pa. Super. 2008) (noting that defendant's statement, "I don't want to talk to you," was an invocation of his **Miranda** rights).  If a suspect "indicates, in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."  **Commonwealth v. Henry**, 599 A.2d 1321, 1323 (Pa. Super. 1991) (internal citations omitted).  The United States Supreme Court, however, has held that the invocation of the right to remain silent or the request for an attorney must be affirmative, clear and unambiguous.  **See Berghuis v. Thompkins**, 560 U.S. 370 (2010) (noting that mere silence in the face of police questioning after being given **Miranda** warnings is insufficient to invoke **Miranda** rights).

In **Commonwealth v. Lukach**, 163 A.3d 1003 (Pa. Super. 2017), we held that the trial court did not err in suppressing statements obtained from a defendant after the defendant stated, "I don't know, just, I'm done talking.  I don't have nothing to talk about."  **Lukach**, 163 A.3d at 1009.  We concluded the defendant's statement was "a clear and unequivocal invocation of his right to remain silent[.]"  **Id.**  We explained that, "[a]lthough ineloquently phrased, the [defendant's] statements were not qualified.  They were not ambiguous.

_____

[3] Under **Miranda**, police officers are required to apprise suspects prior to questioning that they have the right to remain silent, that any statement made may be used against them, and that they have the right to an attorney.  **Miranda**, 384 U.S. at 444.  "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently."  **Id.**

- 6 -

They were not equivocal." *Id.* We further explained that "[t]his was the sort of statement that would lead a reasonable police officer . . . to understand the statement to be a request to remain silent." *Id.* at 1010.

Thus, consistent with **Lukach**, Appellant's statement to Detective Gerace that "*I don't want to talk no more*" was a proper, clear and unambiguous invocation of his Fifth Amendment right to remain silent. As a result, the trial court erred in failing to suppress all statements obtained from Appellant by Detective Gerace after Appellant's affirmative invocation of his right to remain silent.

Nonetheless, even though the trial court erred in failing to suppress Appellant's statements made following the invocation of his Fifth Amendment right, such error was harmless.

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Commonwealth v. Hutchinson**, 811 A.2d 556, 561 (Pa. 2002) (citation omitted). As the trial court reasoned, "The statements by [Appellant] after his first invocation of silence merely repeated, almost word for word, what he had previously stated. Those statements were in no way inculpatory or incriminating and, in fact, were denials of guilt." Trial Court Opinion, 5/2/17, at 8. As noted earlier, during the interview, Appellant invoked his Fifth

Amendment right to remain silent by stating, "I don't want to talk no more, because it really wasn't me. It really wasn't me. I don't want to talk no more." In response, Detective Gerace stated, "ok," and proceeded to ask Appellant, "[W]hy, why don't you want to talk?" Appellant responded by repeating what he said previously (prior to invoking his Fifth Amendment right) to Detective Gerace during the interview: that while he probably went into the Family Dollar store on the same day of the armed robbery, he did not rob the store. Accordingly, because the statements given by Appellant following the invocation of his Fifth Amendment rights were cumulative of near-identical statements he had given to Detective Gerace earlier during the interview, the trial court correctly concluded that its error was harmless. *See* ***Commonwealth v. Cartagena***, 63 A.3d 294, 301 (Pa. Super. 2013) ("[I]f the record supports the result reached by the suppression court, we may affirm on any ground.") (*en banc*) (citing ***Commonwealth v. Lewis***, 39 A.3d 341, 345 (Pa. Super. 2012)).

Appellant next argues that the trial court abused its discretion in allowing the Commonwealth to play to the jury the video recording of his interview by Detective Gerace insofar as the jury was permitted to hear his invocation of his Fifth Amendment right against self-incrimination. In support, Appellant argues that his statements invoking his right to remain silent "were admitted for no purpose other than to incriminate [him]." Appellant's Brief at 17.

It is settled:

- 8 -

[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Tyson*, 119 A.3d 353, 357-58 (Pa. Super. 2015) (internal citations omitted). Moreover, an appellant bears a "heavy burden" to show that the trial court has abused its discretion. *Commonwealth v. Christine*, 125 A.3d 394, 398 (Pa. 2015). "[A]n appellate court may affirm a valid judgment based on any reason appearing as of record, regardless of whether it is raised by appellee." *Commonwealth v. Moore*, 937 A.2d 1062, 1073 (Pa. 2007) (citation omitted).

In *Commonwealth v. Holloman*, 621 A.2d 1046 (Pa. Super. 1993), we held that "[i]t is a clear violation of the accused's constitutional right against self-incrimination to make a reference at trial to his silence while in police custody." *Holloman*, 621 A.2d at 1048. We, however, cautioned that a defendant's Fifth Amendment right to remain silent is not violated when "[a] witness's remark about [a defendant's] post-arrest silence was brief[,]" unintentionally "solicited by the prosecuting attorney," who does not "make any attempt to exploit the remark." *Id.* at 1049.

In *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010), we concluded that the defendant's Fifth Amendment rights were not violated when, at trial, a Commonwealth witness referenced the defendant's invocation of his right to remain silent during a post-arrest interview because the

Commonwealth did not "seek to exploit the reference." *Moury*, 992 A.2d at 177. We also noted that the Commonwealth did not have "any improper purpose in asking the question." *Id.*

In *Commonwealth v. Molina*, 104 A.3d 430 (Pa. 2014) (plurality), the investigating detective testified that while the defendant reluctantly answered several questions on the telephone and ended the call, he refused to go to the police station for further questioning. In closing arguments, the Commonwealth relied on this silence as constituting evidence of guilt. *Molina*, 104 A.3d at 438. Discounting the defendant's reluctance to talk to police on the telephone, the *Molina* Court found that the defendant's "actions in affirmatively and definitively refusing to come to the police station" were sufficient to invoke his right against self-incrimination. *Id.* at 438. Thus, the Court cautioned that the right against self-incrimination "prohibits use of a defendant's pre-arrest silence as substantive evidence of guilty, unless it falls within an exception such as impeachment of a testifying defendant or fair response to an argument of the defense." *Id.* at 451.

In contrast, in *Commonwealth v. Adams*, 104 A.3d 511 (Pa. 2014) (plurality), the detective testified over objection that he attempted to interview the defendant about a homicide, but the defendant responded that he had nothing to say. *Adams*, 104 A.3d at 513. No further reference was made to the defendant's pre-arrest silence. The plurality in *Adams* noted that mere reference to a defendant's silence does not necessarily impinge constitutional rights when guilt is not implied. *Id.* at 517 (citation omitted).

"While we have interpreted the constitutional right against self-incrimination generally to prohibit prosecutors from referencing a defendant's silence as substantive evidence of guilty," the plurality continues, "this Court has also concluded that the right against self-incrimination is not burdened when the reference to silence is 'circumspect' and does not 'create an inference of an admission of guilt.'" ***Id.*** (citation omitted).

Here, consistent with the foregoing cases,[4] we conclude that the trial court did not abuse its discretion in allowing the Commonwealth to play the video surveillance recording to the jury where Appellant can be heard invoking his right against self-incrimination during the interview. The Commonwealth here did not call to the stand any witnesses who testified that Appellant had invoked his right to remain silent during the interview. Stated differently, no witnesses referenced Appellant's invocation of his right to remain silent. Similarly, at no point during trial, including closing arguments, did the Commonwealth exploit, emphasize, or use as substantive evidence of guilt Appellant's invocation of his Fifth Amendment right against self-incrimination. On the contrary, as the trial court noted, to the extent the jury heard

_____

[4] Even though **Molina** and **Adams** concerned pre-arrest silence, their rationale is equally applicable to cases involving post-arrest invocation of **Miranda** rights. **Molina**, 104 A.3d at 449-50 (noting that "the timing of the silence, whether it be pre or post-arrest, or pre or post-**Miranda** warnings, is not relevant to the question of whether a prosecutor's use of the silence as substantive evidence of guilt violates an individual's right against self-incrimination.").

Appellant's invocation of his right against self-incrimination, it was "in the context of a denial of guilt." Trial Court Opinion, 5/2/17, at 8. Specifically, the jury heard Appellant state to Detective Gerace, "I don't want to talk no more, because it really wasn't me. It really wasn't me. I don't want to talk no more." Accordingly, the trial court did not abuse its discretion.[5]

With respect to Appellant's remaining two issues, we conclude, after careful review of the record and the relevant case law, that the trial court accurately and thoroughly addressed the merits of Appellant's claims. *See* Trial Court Opinion, 5/2/17, at 8-16. Accordingly, we affirm Appellant's January 31, 2017 judgment of sentence. We further direct that a copy of the trial court's May 2, 2017 opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/27/2018

---

[5] We observe that Appellant's trial counsel did not request a curative instruction regarding the effect of Appellant's invocation of his right to remain silent as shown to the jury on the video recording.

- 12 -

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :
                                    :

VS.                             :        No.    0738-2016
                                      :

EDGARDO ALFARO-RODRIGUEZ   :

**OPINION**

BY:  KNISELY, J.                                            May 2, 2017

Appellant/Defendant, Edgardo Alfaro-Rodriguez, appeals from the judgment of sentence imposed on January 31, 2017. Defendant claims reversible error occurred in the admission of certain non-inculpatory statements made by Defendant in response to a neutral, clarifying question concerning Defendant's right to remain silent and in the admission of testimony by investigating officers concerning their observations of video and physical evidence as it related to the course of their investigation. Defendant also asserts that the jury's verdict is against the weight of the evidence. The record demonstrates that Defendant's right to remain silent was scrupulously honored, that the testimony of the officers did not cause unfair prejudice or mislead the jury where the jury viewed the video and physical evidence and was free to draw their own conclusions and that the preponderance of the evidence supports the jury's verdict. Therefore, the January 31, 2017 Judgment of Sentence should not be disturbed.

## BACKGROUND

On December 2, 2015, at approximately 4:15 p.m., an individual with a partially covered face entered the Family Dollar store on Duke Street, pointed what appeared to be a handgun at an employee and demanded money.[1] The individual fled when an alarm sounded, but initially approached the entrance door and appears to try and push it open with his ungloved hands.[2] When the door did not open, the individual moved to the exit door and fled the store.[3] Responding officers retrieved video surveillance footage and were able to process a latent writer's palm print from a sticker that was on the area of the door that the individual appeared to have touched.[4] It was later determined that the print belonged to Defendant.[5]

Detective Michael Gerace had the opportunity to interview Defendant on January 27, 2016 in the presence of Detective Stanley Roche.[6] That interview was recorded and played for the jury at trial pursuant to certain stipulations by the parties.[7] Immediately prior to the interview beginning, Detective Gerace read Defendant his *Miranda* rights and Defendant signed a waiver of those rights.[8] During

---

[1] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 96-99; Com. Ex. 2.
[2] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 98, 100; Com. Ex. 2.
[3] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 98, 100; Com. Ex. 2.
[4] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 105, 108-111, 118-122; Com. Ex. 7; Com. Ex. 8.
[5] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 124-125, 144-149, 151; Com. Ex. 7; Com. Ex. 8.
[6] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 151-152
[7] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 152-153, 156-157.
[8] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 153-154; Com. Ex. 5; Com. Ex. 6, clip 2 at 00:33-2:47.

2

the interview, Defendant initially denied having been in the Family Dollar store subsequent to March of 2015 and specifically denied having been in the store in December 2015.[9] However, when Defendant was asked to explain how his print was recovered from within the store, Defendant stated that he probably went into the store and did not remember.[10] Later, Defendant stated that he was going to be honest and that he was in the store in November 2015 with a friend.[11] Defendant repeatedly denied robbing the Family Dollar store,[12] but eventually admitted that he probably was in the store on the same day of the robbery.[13] Furthermore, despite never having been told that the individual in the surveillance video had his face covered, Defendant asked Detective Gerace pointedly if his face could be seen in the video.[14]

At some point during the interview, Defendant suddenly stated "I don't want to talk no more, because it really wasn't me. It really wasn't me. I don't want to talk no more."[15] Detective Gerace confirmed, stating "ok" and then asked "well why don't you want to talk?"[16] Defendant responded by repeating that while he probably

---

[9] Com. Ex. 6, clip 3 at 2:43-4:34.
[10] Com. Ex. 6, clip 3 at 4:33-4:48.
[11] Com. Ex. 6, clip 3 at 4:57-5:00, clip 4 at 00:00-00:27.
[12] Com. Ex. 6, clip 4 at 2:36-2:45, clip 5 at 00:14-00:28, 1:16-1:31; 1:49-2:18, 3:21-3:25, 3:28-3:48.
[13] Com. Ex. 6, clip 5 at 3:08-3:11, 3:28-3:48.
[14] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 152; Com. Ex. 6, clip 5 at 2:58-3:01.
[15] Com. Ex. 6, clip 5 at 3:21-3:25.
[16] Com. Ex. 6, clip 5 at 3:26-3:28.

3

went in the same day, he did not rob the store.[17] Defendant stated again that he did not want to speak, but the interrogation continued.[18]

Prior to and during trial, Defendant moved to suppress and objected to the admission of Defendant's initial statement that he did not want to speak anymore and everything thereafter.[19] It was found that Defendant's right to remain silent was scrupulously honored following his initial statement that he no longer wished to speak and that Detective Gerace's clarifying question following Defendant's statement was neutral and not meant to entice Defendant into abandoning his right.[20] However, it was also found that following Defendant's second statement that he did not wish to speak anymore, that Defendant's right to remain silent was not scrupulously honored.[21] Therefore, it was ruled that the video would be suppressed from the point where Defendant states for the second time that he does not wish to speak any longer.[22]

Following trial on November 28 and 29, 2017, a jury found Defendant guilty of robbery.[23] Following the completion of a presentence investigation, Defendant was sentenced on January 31, 2017 to four (4) to ten (10) years of incarceration.

---

[17] Com. Ex. 6, clip 5 at 3:28-3:48.
[18] Com. Ex. 6, clip 5 at 3:49-5:00, clip 6 at 00:00-4:50.
[19] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 4, 30-32, 149-150, 157.
[20] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 38, 150.
[21] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 38, 150.
[22] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 38, 150.
[23] 18 Pa.C.S.A. 3701(a)(1)(ii).

4

Defendant filed a post-sentence motion on February 8, 2017, which was denied by Order dated February 17, 2017. Defendant filed his notice of appeal on March 20, 2017.

## Statement of Errors Complained of on Appeal

On April 11, 2017, Defendant filed a Statement of Errors Complained of on Appeal asserting the following:

1.   It was error to deny Defendant's motion to suppress Defendant's recorded statements beginning with Defendant's first assertion that he did not wish to speak anymore;

2.   It was error to overrule Defendant's objections to testimony from officers indicating the area of the door they observed the suspect touch in the video because the best evidence of such was the video; and

3.   The jury's verdict was against the weight of the evidence where there were multiple prints recovered from the entrance door and where the eyewitness' estimate of the suspect height and weight differed from Defendant's height and weight.

## DISCUSSION

### I.   Defendant's *Miranda* Rights

Statements obtained from a person after they have decided to remain silent may be admissible if the "right to cut off questioning" was scrupulously honored.

5

*Com. v. Harris*, 972 A.2d 1196, 1203 (Pa.Super. 2009) (citing *Michigan v. Mosley*, 423 U.S. 96, 103–104 (1975)). While certain factors have been recognized as instructive in determining whether the right has been scrupulously honored, the pivotal question is the purpose of the resumed questioning as shown by the circumstances. *Id.* at 1203-05. *Miranda v. Arizona*, 384 U.S. 436 (1966) bars only "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Com. v. Henry*, 599 A.2d 1321, 1325 (Pa.Super. 1991) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)) (internal citations omitted). Therefore, the appropriate test is whether the purpose of resuming the questions was to entice the person to abandon that right. *Harris*, 972 A.2d at 1203-05. If the circumstances do not indicate that the police acted coercively to force the person to change their mind, then the invocation of the right to remain silent was scrupulously honored. *Id.* at 1204.

It has been specifically noted that clarifying questions following a suspect's attempt to invoke certain rights during custodial interrogation may help to protect the rights of a suspect. *Davis v. United States*, 512 U.S. 452, 461–62 (1994). For instance, it may be helpful to both the police and the suspect to clarify whether the suspect wishes to remain silent because he desires the assistance of counsel. *See, Davis v. United States*, 512 U.S. at 461–62 (noting that such clarification helps

protect the rights of the suspect by ensuring that he gets an attorney if he wants one).

Therefore, questions that are merely for purposes of clarification, have been found to be proper. *Id.*

During questioning in the instant case, Defendant suddenly stated that he did not want to talk anymore.[24] Detective Gerace first acknowledged Defendant's statement and then asked what could only be described as a question seeking clarification and an explanation of the prior statement.[25] The circumstances do not indicate coercion, an attempt to entice Defendant into abandoning his right or knowledge that the question was reasonably likely to elicit an incriminating response. In fact, the question did not elicit an incriminating response from Defendant because he merely repeated what was previously said and reaffirmed that he did not wish to speak anymore.[26] All further statements were suppressed.[27]

Even if it were found that Defendant's right to remain silent was not scrupulously honored or that it was error to permit the jury to hear Defendant's invocation of silence, it does, alone, mean that Defendant is entitled to a new trial. *See, e.g., Com. v. DiNicola*, 866 A.2d 329, 336–37 (Pa. 2005) (holding that the mere revelation of silence, or even an explicit reference to it, does not establish innate

---

[24] Com. Ex. 6, clip 5 at 3:21-3:25.
[25] Com. Ex. 6, clip 5 at 3:26-3:28.
[26] Com. Ex. 6, clip 5 at 3:28-3:48.
[27] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 38, 150.

prejudice); *Henry*, 599 A.2d at 1326–27 (1991) (holding that even the erroneous admission of a coerced confession can be constitutionally harmless). The statements by Defendant after his first invocation of silence merely repeated, almost word for word, what he had previously stated. Those statements were in no way inculpatory or incriminating and, in fact, were denials of guilt. As for the admission of Defendant's invocation of silence, there is no indication in the record that the admission of such in any way suggested to the jury that Defendant's wish to remain silent was the equivalent of a tacit admission of guilt. If fact, it was offered by Defendant in the context of a denial of guilt. It was never referenced by the Commonwealth and was not presented in any way that burdened Defendant's Fifth Amendment right. The record fails to demonstrate that the outcome of the case would have been any different absent the admission Defendant's non-incriminating statements. Therefore, admission of such, even if in error, was constitutionally harmless and does not warrant relief.

## II. Testimony Concerning the Officers' Observations

During the second showing of the surveillance video at trial, Officer Jonathan Caple identified the point in the surveillance video where the suspect can be seen touching the inside of the entrance door in the store and made a brief indication of the general area in which he observed the suspect make contact.[28] Defendant's

---

[28] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 109-110.

objection to this testimony was overruled.[29] Officer Caple then indicated, without

objection, where the suspect was observed touching the inside of the door in a still

photograph.[30] Officer Caple explained that it was his observation of the surveillance

video, specifically the area of the door touched by the suspect, that led him to contact

Detective Gerace about looking for fingerprints in that particular area.[31]

Detective Gerace then testified, without objection, that he was able to

determine, from his observation of the surveillance video, that the suspect touched a

sticker located on the inside of the entrance door.[32] Like Officer Caple, Detective

Gerace was asked to indicate where in the still photograph of the entrance door that

he observed the suspect touch the door in the surveillance video.[33] Defendant

objected to this line of questioning arguing that the video is the best evidence of

where the suspect touched the door.[34] Defendant's objection was overruled, but the

question was reworded anyway and Detective Gerace was asked to indicate where

in the photograph of the door the suspect was observed to have touched the door and

where Detective Gerace ultimately performed the latent print processing.[35] Detective

Gerace did not indicate the area he observed the suspect touch, but did describe how

---

[29] N.T. Criminal Trial, 11/28/17-11/29/17, p. 110.
[30] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 110-111.
[31] N.T. Criminal Trial, 11/28/17-11/29/17, p. 111.
[32] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 118-119.
[33] N.T. Criminal Trial, 11/28/17-11/29/17, p. 119.
[34] N.T. Criminal Trial, 11/28/17-11/29/17, p. 119.
[35] N.T. Criminal Trial, 11/28/17-11/29/17, p. 119.

9

the sticker was affixed to the door and how he performed the latent print processing before removing the sticker from the door.[36]

Pennsylvania's best evidence rule requires that an original recording or photograph be produced in order to prove its content. *Com. v. Loughnane*, 128 A.3d 806, 813 (Pa.Super. 2015), *reargument denied* (Feb. 1, 2016), *appeal granted in part sub nom. Com. v. Loughnane*, No. 164 MAL 2016, 2016 WL 5819328 (Pa. July 19, 2016). *See, also*, Pa.R.E. 1002. The purpose of the rule, similar to the common law rule, include: ensuring the exact words of certain documents are used for interpretation of those documents; avoiding the inaccuracies to which secondary evidence is susceptible; inhibiting fraud by allowing the examination of the original content; and furnishing authenticating information that may only be present with the original. Pa.R.E. 1002 (Comment). The best evidence rule has been applied to bar testimony relaying the contents of a videotape when the tape itself was never admitted into evidence to prevent misleading the jury. *Com. v. Lewis*, 623 A.2d 355, 358 (Pa.Super. 1993). The best evidence rule does not bar testimony concerning an officer's observations of the content, his personal knowledge or that which might assist the jury in understanding the content where the original is admitted into evidence. *Com. v. Brown*, 134 A.3d 1097, 1106 (Pa.Super. 2016), *appeal denied,*

---

[36] N.T. Criminal Trial, 11/28/17-11/29/17, p. 120.

10

145 A.3d 161 (Pa. 2016); *Com. v. Cole*, 135 A.3d 191, 196 (Pa.Super. 2016), *appeal denied*, 145 A.3d 162 (Pa. 2016).

In the instant case, Officer Caple and Detective Gerace gave limited testimony after the presentation of the surveillance video, to explain the course of their investigation, specifically, the reason prints were processed from that particular area of the door, and to direct the jury's attention to specific portions of the surveillance video and still photograph. The testimony of the officers was based upon their experience, observations and personal knowledge of where and how the sticker was located on the inside of the entrance door. Furthermore, both the video and the photograph were admitted into evidence, they were viewed by the jury multiple times without narration[37] and the jury was specifically instructed that they were the sole judges of the facts, had the sole responsibility of weighing the evidence, and all inferences therefrom, and were free to disregard any evidence which they found to be not credible.[38] Because the jury watched the video and saw the photograph, they were free to disregard the officers' conclusions or use them as guides to examine the photograph and video more closely. The record specifically demonstrates that the jury did not simply rely upon the testimony of Officer Caple and Detective Gerace, but instead sought to thoroughly examine that portion of video themselves to reach

---

[37] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 204-206.
[38] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 188-190.

11

a determination. The testimony of the officers was, therefore, not unfairly prejudicial and not in violation of the rules of evidence.

## III.   Weight of the Evidence

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence is addressed to the discretion of the trial court, but "should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Com. v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013). A challenge to the weight of the evidence "concedes that there is sufficient evidence to sustain the verdict" and, therefore, does not require that the trial court view the evidence in the light most favorable to the verdict winner. *Com. v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). However, the role of the trial judge is not to sit as another juror, but "to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Widmer*, 744 A.2d at 751–52 (internal citation omitted). Previously, it was held that a new trial is warranted if "the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Clay*, 64 A.3d at 1055 (internal citation omitted).

Appellate review of a decision concerning the weight of the evidence is well settled:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (Pa.1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Widmer*, 560 Pa. at 321–22, 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Widmer*, 560 Pa. at 322, 744 A.2d at 753 (quoting *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 447, 625 A.2d 1181, 1184–85 (1993)).

13

*Id.* An appellate court cannot "invade the trial judge's discretion any more than a trial judge may invade the province of a jury, unless both or either have palpably abused their function." *Id.* at 1056.

Here, Defendant claims that the verdict was against the weight of the evidence, in part, because other prints, though not usable for identification purposes, were also recovered from the door.[39] It has been recognized that "the probative value of fingerprint evidence 'depends entirely on the circumstances of each case.'" *In re M.J.H.*, 988 A.2d 694, 697 (Pa.Super. 2010) (citing *Com. v. Cichy*, 323 A.2d 817, 818 (Pa.Super. 1974)). In the instant matter, the verdict is not supported by the mere existence of Defendant's prints among many others. Defendant left a clear palm print on the inside of a door that was not intended to be used from the inside of the store. Furthermore, Defendant's print was directly linked to the suspect because surveillance video showed the suspect touching the door in the same area that Defendant's print was recovered. The existence of the surveillance video permitted the jury to do more than merely speculate, but allowed them to determine, in their role as the sole fact finders, whether the print recovered from the door was placed there by the suspect in the video. While Defendant admitted that he was present in the store on prior occasions, Detective Gerace explained that prints will lose their

---

[39] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 129-130.

14

value over time and that the heat from inside the store would have an effect on the quality of any prints on the inside of the door over time.[40] Additionally, Defendant's statements concerning his presence in the store was inconsistent and contradictory. In fact, Defendant only admitted to possibly having been in the store on the day of the robbery when he was confronted with the evidence. Considering the record as a whole, especially the surveillance video, Defendant's clear print, the testimony of the responding officer and detectives and Defendant's contrary and inconsistent statements, the existence of unidentifiable prints and smudges on the door to the store is not so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. Therefore, the verdict cannot be found to be against the weight of the evidence.

Defendant also asserts that the verdict was against the weight of the evidence because the eye witness estimated that the suspect weighed approximately one hundred eighty-five (185) pounds and stood approximately six (6) feet tall,[41] while Detective Gerace stated in his report that Defendant weighs one hundred fifty (150) pounds and stands five (5) feet and seven (7) inches tall.[42] The slight difference in Defendant's physical characteristics as compared to the eye witness' estimate is clearly outweighed by the positive print identification directly linking Defendant to

---

[40] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 130-131.
[41] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 99, 102
[42] N.T. Criminal Trial, 11/28/17-11/29/17, pp. 161-162.

15

the robbery and the video surveillance of the suspect. The video permitted the jury, as the sole fact finders in the case, to determine if Defendant indeed matched the physical characteristics of the suspect in the video. Considering the record as a whole, the eye witness' erroneous estimate is not so clearly of greater weight that to ignore it or to give it equal weight with all the facts is to deny justice. Therefore, the verdict cannot be found to be against the weight of the evidence.

For all the foregoing reasons, the judgment of sentence imposed on January 31, 2017 should not be disturbed.

BY THE COURT:

HOWARD F. KNISELY
JUDGE

**ATTEST:**

**Copies to:**

MaryJean Glick, Senior Assistant Public Defender
Office of the District Attorney

CLERK OF COURTS
2017 MAY -2 PM 3:35
LANCASTER COUNTY, PA

16